VICTOR A. SAHN (CA Bar No. 97299)
  victor.sahn@gmlaw.com
MARK S. HOROUPIAN (CA Bar No. 175373)
  mark.horoupian@gmlaw.com
**GREENSPOON MARDER LLP**
1875 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone: 213.626.2311
Facsimile: 954.771.9264

Attorneys for 9300 Wilshire LLC
Chapter 11 Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re | Case No. 2:23-BK-10918-ER |
| 9300 WILSHIRE LLC, | Chapter 11 |
| Debtor. | **DEBTOR'S OMNIBUS REPLY TO OPPOSITIONS OF AES REDONDO BEACH, LLC AND THE CITY OF REDONDO BEACH TO MOTION OF CHAPTER 11 DEBTOR UNDER 11 U.S.C. §363 AND BANKRUPTCY RULE 6004 FOR AUTHORIZATION TO SELL DEBTOR'S INTEREST IN REAL PROPERTY AT WILSHIRE & LINDEN IN BEVERLY HILLS, CALIFORNIA TO E.D. FLORES, LLC OR ITS NOMINEE BY PRIVATE SALE; DECLARATIONS OF LEONID PUSTILNIKOV AND VICTOR A. SAHN, ESQ. IN SUPPORT OMNIBUS REPLY** |
| | [Set for Hearing on Shortening Time] |
| | Date:       July 11, 2023<br>Time:       10:00 A.M.<br>Place:      Edward R. Roybal Federal Building<br>              and Courthouse<br>              255 E. Temple Street,<br>              Courtroom 1568<br>              Los Angeles, CA 90012 |
| | The Hon. Ernest Robles |

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

MSH 54892781v2

1

2

# TABLE OF CONTENTS

**Page**

I.   SUMMARY OF OPPOSITIONS AND RESPONSES THERETO ......................................1

     A.   Objections to Background Statements: ........................................................2

     B.   Lack of Admissible Evidence Regarding Value of Property ........................2

     C.   Lack of Benefit to the Estate ......................................................................6

     D.   Objection to Payment of East West Bank and Other Deductions ................8

     E.   Objection to Payment of Broker's Commission. .........................................10

     F.   Lack of Evidence of Good Faith .................................................................10

     G.   Approval of a Private Sale is an Appropriate Exercise of the Debtor's
          Business   Judgment and of this Court's Discretion ..................................11

II.   CONCLUSION .................................................................................................13

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*In re Edwards*,
228 B.R. 552 (Bankr. E.D. Pa. 1998) ........................................................ 11

*In re Frantz,*
534 B.R. 378 (Bankr., D. Idaho, 2015) .................................................... 11

*In re Iridium Operating LLC*,
478 F.3d 452, 466 (2d Cir. 2007) .............................................................. 6

*In re Lionel Corp.*,
722 F.2d 1063, 1070 (2nd Cir 1983) .......................................................... 6

*In re Smith*,
632 B.R. 297, 299 (Bankr. D.S.C. 2021) .................................................... 3

*In re Walter*,
83. Bankr. 14, 19 (B.A.P. 9th Cir. 1988) .................................................... 6

*Justice v. Pennzoil Co.*,
598 F.2d 1339, 1344 (4th Cir. 1979) .......................................................... 3

*Whisenant v. James Island Corp.*,
277 S.C. 10, 13, 281 S.E.2d 794, 796 (1981) ............................................ 3

*Wintz v. American Freightways, Inc. (In re Wintz Cos.)*,
230 B.R. 840 (8th Cir. BAP 1999) .......................................................... 11

*Yadkin Valley Bank & Trust Co. v. McGee*,
132 B.R. 827 (Bankr. M.D.N.C. 1991) ...................................................... 6

## **STATUTES**

11 U.S.C. § 363(b) ............................................................................ 6, 11

11 U.S.C. § 363(m) .............................................................................. 11

11 U.S.C. § 363(n) .............................................................................. 11

11 U.S.C . § 363 ................................................................................ 11

## **OTHER AUTHORITIES**

*Bankr. Evid. Manual*,
§ 701:2 (2020-21 ed.) ........................................................................... 3

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

1    **TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY**

2    **JUDGE, THE TWENTY LARGEST UNSECURED CREDITORS, THE OFFICE OF THE**

3    **UNITED STATES TRUSTEE, AND PARTIES ENTITLED TO NOTICE:**

4              On June 28, 2023, 9300 Wilshire, LLC, the debtor and debtor in possession herein (the

5    "Debtor") filed and served its motion on shortened time ("Motion")[Dkt. No. 78] for an order

6    authorizing the Debtor to sell its fractional interest in the real property located at and described as

7    9740 Wilshire  Blvd, and 125 and 129 S. Linden Drive, Beverly Hills, CA 90212, the Beverly Hills

8    Property (the "Wilshire & Linden Property"), for the gross purchase price of $4,300,000 ("Purchase

9    Price") to one of the other co-owners of the Wilshire & Linden Property, Ed Flores, LLC (the

10    "Buyer").  The Sale Motion was filed as Docket No. 77 and was also filed on June 28, 2023.  As

11    noted in the Motion, the Buyer is an insider of the Debtor.  The Debtor makes no secret of this fact,

12    and detailed at length the relationship of the Buyer to the Debtor.  The objective of the proposed

13    sale is to provide needed liquidity to the Debtor.  Notably, the sale will bring approximately

14    $2,600,000 into the bankruptcy estate (the "Estate") in free and clear funds, as the bankruptcy

15    estate's interest in the Beverly Hills Property is not subject to the liens of any creditor.  Despite the

16    obvious benefit to the Estate, and the urgency for the need to close the transaction on an expedited

17    basis as described in the declaration the Debtor's principal, Leo Pustilnikov ("Pustilnikov") attached

18    to the Motion, AES and the City of Redondo Beach have each filed oppositions to the Motion

19    ("Opposition" or, collectively, "Oppositions".   In this reply ("Reply"), the Debtor will address each

20    of the Oppositions.

I.

**SUMMARY OF OPPOSITIONS AND RESPONSES THERETO[1]**

21

22              While AES asserts more categories of objections than the City, the Oppositions overlap

23    with one another.  As such, the Debtor will address them jointly.   The Oppositions are distilled to

24    the following areas of complaint:

25

26

27    [1] Each of the Responses found below are supported by the Declaration of Leo Pustilnikov which is
included as a part of this Response and also Mr. Pustilnikov's Declaration submitted in support of

28    the Sale Motion, Docket No. 77, pgs. 24-30.

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

A.      Objections to Background Statements:

1.      **Objection**:  Both AES and the City of Redondo Beach, stated that the time devoted in the Motion to the background of the Debtor's history, its litigation with the City and AES, and the reasons for its Chapter 11 bankruptcy case are irrelevant to the Motion. The City and AES each advance factual assertions rebutting certain statements by the Debtor.

2.      **The Debtor's Response**:  The Debtor disagrees with this assertion and believes that the history and facts of the major disputes in this case are relevant for background purposes to most proceedings in this case.   The Debtor also disagrees with the various positions asserted by the Opposing Parties in response and rebuttal to the Debtor's factual statements. These disagreements notwithstanding, the Debtor will focus on the merits of the relief requested in the Motion, the sale of the Debtor's interest in the Willshire & Linden Property, in this reply. All rights are reserved with respect to the factual discussion of the parties positions regarding the legal and factual assertions related to the history of the Redondo Beach Property, which will be determined by the Court at the appropriate time and through the course of the litigation currently pending.

B.      Lack of Admissible Evidence Regarding Value of Property

1.      **Objection**:  The Debtor does not provide sufficient evidence of value of its interest in the Wilshire & Linden Property, and has not actively marketed the same.   As such, the Opposing Parties assert the sale should not be approved.   They are incorrect.

2.      **Debtor's Response**:  The Debtor has provided evidence of the value of the Wilshire & Linden Property namely in the form of Schedule A to the Debtor's amended bankruptcy schedules (Dkt. Nos. 27, 29, 48)  which place the value of the Debtor's interest in the Wilshire & Linden Property at $2,785,200, based on a $40,000,000 valuation of the Wilshire & Linden Property.   The Schedules were signed by Mr. Pustilnikov under penalty of perjury.   The schedules noted that the valuation was based on the Debtor's estimate.   This estimate was not arbitrary.   It was carefully made by Mr. Pustilnikov based on his extensive knowledge of real estate, his unquestionable experience in investing, buying and selling real estate in California, and the governing documents relating to the Wilshire & Linden Property ownership.  While AES

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

1    discounts this estimate as Mr. Pustilnikov saying "trust me", and that the sale should only

2    approved after marketing the Wilshire & Linden Property or obtaining an appraisal, the reality is

3    the Court can and should trust Mr. Pustilinkov's opinion. *Pustilnikov Decl., ¶¶8-10, pg. 15, lines*

4    *19-28 thru pg. 16, lines 1-3 (para. 8); pg. 16, lines 1-2 (para. 9), pg. 16, lines 6-15 (para.*

5    *10)lines 1--17 of Reply.*

6             Further, this estimate of value was provided to both of the Opposing Parties in the

7    Debtor's bankruptcy schedules which were available to them prior to the Debtor's 341A hearing.

8    Both Opposing Parties appeared at the 341A hearing through the same counsel who signed each of

9    the objections to the sale. *Reply, Exhibit 1 hereto.* Each of the Opposing Parties had the

10   opportunity to examine Mr. Pustilnikov who appeared for the Debtor at the 341A meeting and

11   testified under oath.  In spite of the extensive time given by the US Trustee to all parties to

12   examine Mr. Pustilnikov (one hour or perhaps two), neither of the Opposing Parties disputed the

13   value given by the Debtor to the Wilshire & Linden property.  At the conclusion of the 341A

14   hearing, counsel for AES expressed a desire to examine Mr. Pustilnikov further on the bankruptcy

15   schedules and statement of financial affairs.  The U.S. Trustee concluded the 341A meeting and

16   invited any party, including the Opposing Parties, to take a Rule 2004 examination of the Debtor.

17   Neither of the Opposing Parties nor anyone else has done so.  For the Opposing Parties to have

18   failed to raise this issue at the 341A meeting in any manner and having failed to conduct a Rule

19   2004 examination but to now try to raise an issue regarding valuation is an impermissible

20   collateral attack on the information in the Debtor's schedules and statement of financial affairs

21   given under the penalty of perjury. *See Declaration of Victor A. Sahn.*

22            From an evidentiary standpoint, a debtor's opinion of value is admissible and is to

23   be considered by the Bankruptcy Court.  *See In re Smith*, 632 B.R. 297, 299 (Bankr. D.S.C. 2021)

24   ("The law is clear that an owner is competent to give her opinion of the value of her own property,

25   as provided by the Federal Rule of Evidence 701.") (quoting Barry Russell, *Bankr. Evid. Manual*,

26   § 701:2 (2020-21 ed.)); *see also* <u>*Justice v. Pennzoil Co.*</u>, 598 F.2d 1339, 1344 (4th Cir. 1979)

27   (finding that "a landowner's opinion concerning the value of his land is certainly admissible");

28   <u>*Whisenant v. James Island Corp.*</u>, 277 S.C. 10, 13, 281 S.E.2d 794, 796 (1981) (stating that "a

1    property owner, who is familiar with his property and its value, may give his estimate as to its

2    value or the damage inflicted upon it even though he is not otherwise an expert"). While this

3    general rule would apply to all Debtors, Mr. Pustilnikov's experience and knowledge lends

4    substantially more credibility to his estimate. *See Pustilnikov Declaration, ¶9, pg. 16.*

5              As the owner's representative and Manager of the Wilshire & Linden Property, Mr.

6    Pustilnikov used a valuation $40,758,294 for purposes of selling the Debtor's 10.55% interest in it.

7    The basis for this valuation is the Wilshire side of the property which is a leasehold interest at

8    present, was valued at $12,500,000 and the Linden side of the property in which the Debtor holds

9    a fee interest was valued at $28,258,294. The $28,258,294 value is based upon the fact that this is

10   a vacant parcel located in Beverly Hills. *Pustilnikov Dec.,¶ 8, pg. 15, line 26.* Mr. Pustilnikov is

11   generally familiar with the value of real estate in Beverly Hills owing to the fact that he (or his

12   entities) have bought and sold over 12 projects in Beverly Hills in the last five years. The

13   Wilshire portion of the property was valued based upon the net present value of the future cash

14   flows as it is effectively an operating lease absent the purchase of the fee. Generally stated, over

15   the years of his business career, he has bought and sold over 100 separate properties, and the vast

16   majority of these were in Southern California. *Pustilnikov Dec., ¶9, pg. 16.* Just in 2022, Mr.

17   Pustilnikov bought or sold approximately 15 properties. As stated previously, the Wilshire &

18   Linden property is really two properties; one is the leasehold improvements of an office building,

19   which is on Wilshire Boulevard and the property is a development site on Linden is a vacant lot

20   with some surface parking. *Pustilnikov Dec., ¶10, pg. 16, lines 6-15.*

21             Mr. Pustilnikov believes and submits that his valuation of the Wilshire & Linden

22   Property used in the Bankruptcy Schedules (as to which he also testified at the Debtor's 341A

23   meeting where he was questioned about this property by counsel for AES) remains accurate,

24   except that in the four months since the Bankruptcy Schedules were filed, he has been able to

25   negotiate a higher price in spite of the sharp rise in interest rates, the increase in development costs

26   due to inflation, and the limited sources of financing because of troubles with regional banks who

27   were the primary sources of such financing, particularly unentitled raw land. Despite these

28   prevailing negative market factors, the Buyer has agreed to purchase the property based on Mr.

**GREENSPOON MARDER LLP**
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

1  Pustilnikov's valuation without negative adjustment.  Mr. Pustilnikov's valuation is the only

2  evidence before the Court regarding the value of the Debtor's interest in the property.  Without any

3  evidence from AES or any other party that contradicts that evidence, the Court can and should

4  adopt the Debtor's valuation particularly when it is consistent with the valuation given to the

5  Property in the Debtor's bankruptcy schedules and where the Opposing Parties had the opportunity

6  at the Debtor's 341A examination to question the property's value when they examined Mr.

7  Pustilnikov under oath. *Pustilnikov Decl., ¶11, pg. 16, lines 16-28, pg. 17, line 1.*

8          With respect to the lack of marketing of the subject property, the Debtor did not do so

9  because doing so would have been futile.   The Debtor should not be required to pursue a course of

10  action that would only serve to delay the inevitable—no third party would be willing to purchase a

11  minority interest in a property without a substantial discount.   As stated in the Supplemental

12  Pustilnikov Declaration, there is no market in his experience (with his experience is partially

13  detailed above) for sales of such fractional interests in real property, particularly when the balance

14  of the interest holders are involved together in multiple other real estate properties and projects

15  and have been involved in such projects together for many years.  Over the years, Mr. Pustilnikov

16  and his partners have never sold a fractional interest, particularly one as small as this one, to a

17  third party not already affiliated with a property.   Marketing it would be a waste of time and effort

18  and no third party real estate broker would agree to be hired to engage in such marketing under the

19  circumstances described above.  In addition, it would be difficult if not impossible for any

20  purchase of a fractional interest to obtain financing on this type of a transaction, particularly in

21  today's capital market and with a loan that has matured and is due.  In fact, if the Debtor's 10.55%

22  interest were put up for sale and an auction of some kind conducted, one of the existing investors

23  (were he or she interested in taking advantage of the opportunity) would likely take advantage and

24  purchase the interest for far less than is being paid in this sale. *Pustilnikov Decl., ¶14, pg. 18, lines*

25  *1-7.*

26          Notably, there is nothing in Section 363 of the Bankruptcy Code that requires that an asset

27  be marketed before a Court can approve a sale.   Nor is a private sale such as this one prohibited

28  by the Court.  In fact, Federal Rule of Bankruptcy Procedure 6004 expressly authorizes a private

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

1   sale.   A sale only needs to be supported by the sound and reasonable business judgment of the

2   Debtor.  *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *In re Lionel Corp.*,

3   722 F.2d 1063, 1070 (2nd Cir 1983).  As noted by the Ninth Circuit Bankruptcy Appellate Panel,

4   the court should apply a flexible, case-by-case approach.  *See In re Walter*, 83. Bankr. 14, 19

5   (B.A.P. 9th Cir. 1988) ("the bankruptcy judge should consider all salient factors pertaining to the

6   proceeding, and according, act to further the diverse interest of the debtor, creditors and equity

7   holders, alike").  *See also In re Iridium Operating LLC*, 478 F.3d 452, 466 (2d Cir. 2007) (relief

8   under Section 363(b) "is permissible if the 'judge determining [the] . . . application expressly

9   find[s] from the evidence presented before [him or her] at the hearing [that there is] a good

10  business reason to grant such an application'") (quoting *In re Lionel Corp.*, 722 F.2d at 1071 (2d

11  Cir. 1983) (*emphasis added*) (in considering a Section 363(b) motion, "**a bankruptcy judge must**

12  **not be shackled with unnecessarily rigid rules when exercising the undoubtedly broad**

13  **administrative power granted him under the Code," but must simply find a "good business**

14  **reason" supporting the proposed transaction**)). *See also, Yadkin Valley Bank & Trust Co. v.*

15  *McGee* (In re Hutchinson), 132 B.R. 827 (Bankr. M.D.N.C. 1991) (once trustee

16  determines that liquidation is in best interests of estate, trustee can begin actual

17  liquidation process which may take weeks, months, or years, depending on nature of

18  assets to be liquidated and method of liquidation selected by trustee; although

19  Bankruptcy Code expresses no preference between private and public sales, if property

20  is unusual in nature or has substantial fair market value, a trustee may determine that a

21  private sale is in best interests of estate). As stated above, given the futility of marketing a

22  fractional interest in a real estate project such as the Wilshire & Linden Property, the Court can

23  and should approve its sale as proposed based on the evidence presented.

24       C.    Lack of Benefit to the Estate

25       1.    **Objection**:   AES asserts that there is no demonstrable benefit to the Estate

26  from the proposed sale, and that the primary motivation and benefit is to allow its insiders to

27  refinance the Wilshire & Linden Property.

28       2.    **Debtor's Response:** The factual spin by AES to assert that the Debtor

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

does not stand to benefit from the sale that will bring approximately $2.6 million in free and clear

cash into the estate is truly remarkable in light of the clear factual presentation made in the

Motion.  While it is true that the justification for hearing the matter on shortened time was the

existence of a default with the lender on the Wilshire & Linden Property, East West Bank, and the

need to refinance the property before East West Bank begins exercising its remedies, the

predicament is precisely what has led to the Debtor's ability to negotiate a sale of the asset to one

of the property's co-owners for a price that nets the Estate slightly more than the property's value

given in the Debtor's bankruptcy schedules.  The Estate will be benefitted because it will receive

funds that will pay, under the Debtor's Plan of Reorganization, the claims of unsecured creditors.

The Redondo Property, at this point, does not generate revenue for the Estate.  The Debtor has

repeatedly informed the Court that the other properties or interests in properties owned by the

Debtor will assist the Debtor in funding its Plan of Reorganization.  The sale of the Debtor's

interest in the Wilshire & Linden Property is necessary because the secured debt owed by owner

of that Property is in default because of this bankruptcy filing, and is now all due and payable.

Attached hereto as Exhibit "3" is the "Changes in Terms Agreement" between the borrowers on

the Wilshire & Linden Property (including the Debtor) and East West Bank.  The Changes in

Terms Agreement provides, without limitation, that the maturity date of the loan was extended

from February 4, 2023 until May 5, 2023.  That date has come and gone and it is now necessary

that the secured indebtedness on the Wilshire & Linden Property in which the Debtor holds a

10.55% interest must be refinanced.  If it is not refinanced, East West Bank will eventually and in

the near term, record a Notice of Default and proceed against the Wilshire & Linden Property by

way of non-judicial foreclosure sale.  This will be avoided through a sale of the Debtor's interest

in the Wilshire & Linden real property which will enable the new lender that has been obtained to

provide new financing which will pay East West Bank in full.  Loans on properties like the

Wilshire & Linden Property are not easy to obtain because one of the two parcels (the Wilshire

Boulevard parcel) is held under a Ground Lease whose expiration is in approximately 29.5 years.

Most lenders will not finance against collateral where there is a lease and not ownership.  No

lender (and certainly not the one found for the Wilshire & Linden Property) will provide this

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

1  financing where one of the owners of the Property is in a bankruptcy case.  For this central

2  reason, the sale of the Debtor's 10.55% interest in the Wilshire & Linden property, for a

3  demonstrably fair price, must be approved.  *Pustilnikov Decl., ¶12, pg. 19, lines 2-25.*

4          AES' statement that the "Proposed Sale is more likely to harm the Debtor's estate

5  than to benefit it" is pure fiction—and no evidence is offered in support of this misguided factual

6  assertion.  Whether or not East West Bank asserts a right to default interest is a fact that exists

7  whether or not the Debtor is permitted to move forward with the sale.   Does AES suggest that if

8  the Debtor does not move expeditiously to monetize this asset for the benefit of the Estate in the

9  manner proposed and holds onto the property instead while in default, the value to the Estate will

10  somehow grow?   To the contrary, if East West Bank asserts default interest, those pecuniary

11  charges will grow and further erode the value of the Debtor's equity in the Wilshire & Linden

12  Property.   Another curious exercise of creative writing is where AES suggests that the "best-case

13  scenario" provides the Debtor with only the "net profit of $80,000", which it states is insufficient

14  to cover even two months of professional fees.   Does AES actually not understand that the Debtor

15  will be receiving approximately $2.6 million or more from the sale?  It should read the Motion

16  more carefully.

17          D.    Objection to Payment of East West Bank and Other Deductions

18          1.    **Objection**:   AES asserts that East West Bank should not be paid the

19  Debtor's pro-rata share of the loan owed to it on closing.  Further both Opposing Parties raise

20  issue with the deduction of approximately $250,000 in other loans.

21          2.    **Debtor's Response**:  This objection does not reflect an understanding of

22  what the Sale Motion was meant to convey.  The net proceeds of the sale of the 10.55% of the

23  Debtor's interest in the Wilshire & Linden Property <u>will go entirely to the Debtor after payment or</u>

24  <u>the reservation from the sales proceeds of 10.55% of proceeds from the sale allocated to the</u>

25  <u>Debtor's pro rata portion of the loan</u>.  In order to calculate the value of the offer received for the

26  Debtor's interest, there are necessary deductions from the price being paid which allocates the

27  sales proceeds to parties other than the Debtor.  One allocation is to 10.55% of the existing

28  secured loan on the Wilshire & Linden Property.  Is AES really confused about this self-evident

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

1    fact which its lawyers, who are highly sophisticated practitioners, cannot both understand, and

2    which they have previously experienced in connection with dozens or hundreds of bankruptcy

3    and non-bankruptcy sales?  If the entirety of the Wilshire & Linden Property were instead being

4    sold, subtracted from those sales proceeds would be the balance due on the loan from East West

5    Bank.  The remaining proceeds after payment of the secured loan, costs of sale, repayment of

6    advances to the Wilshire & Linden project would be paid to each of the co-owners of the Wilshire

7    & Linden project, each payment being as a portion of each co-owner's interest in the Property.

8    Under such a hypothetical situation, by operation of the economics of the transaction and the

9    contractual provisions of the LLC agreement, effectively subtracted from 9300 Wilshire's share

10    would be 10.55% of the remaining loan balance to East West Bank at the time of the sale's

11    closing.  In this case, the proceeds of the East West loan are being taken out of the sale proceeds

12    of the Debtor's interest in the Wilshire & Linden project now because now is the time that the

13    Debtor's interest in the project has been monetized.  It is clear that this should be the case.  AES'

14    feigned confusion about this cannot be given any weight or credibility. *Pustilnikov Decl., ¶15, pg.*

15    *20, lines 18-28, pg. 21, lines 1-6.*

16         There appears to be an overall confusion with the economics of the transaction and

17    what is actually being proposed.  The following calculation should provide additional clarity:

18         <u>Property Value: $40,758,294</u>

19         <u>10.55% of this Valuation-$4,300,000</u>

20         Deductions from $4,300,000 Sales Price:

21    - **EWB Loan** with Remaining balance of approximately $13,730,000-
         10.55% of that balance equals $1,448,515

22

23    - **Advances to the Property**-these advances total $2,300,000 for the
         benefit of the entire property and were to pay operating shortfalls on

24         the Wilshire & Linden project-the Debtor's allocated portion is
         $242,650

25    - **Lease Arrearage on Ground Lease for Wilshire Boulevard
         Parcel**-total arrearage is $312,609.  9300 Wilshire's allocated

26         portion of this is $32,980.29.

27         1.    The Total of these deductions is $1,724,145.29, leaving an "equity" to the

28    Debtor of $2,575,855.00.  That equity has been increased to $2,600,000 which is what the Debtor

1    will receive. *Pustilnikov Decl., ¶15, pg. 20, lines 18-28, pg. 21, lines 1-6.*

2           E.    Objection to Payment of Broker's Commission.

3                 1.    **Objection:** Both Opposing Parties oppose the proposed payment of a 1%

4    commission to LND Realty, who is acting as broker for both the Debtor and the Buyer, and who,

5    as disclosed, is an insider of the Debtor.

6                 2.    **Response to Objection**: In light of the objections, the Debtor hereby

7    withdraws its request to pay the proposed commission. *Pustilnikov Decl., ¶13, pg. 19, lines 26-

8    28, pg. 20, line 1; Pustilnikov Decl., ¶16, pg. 21, lines 7-19.*

9           F.    Lack of Evidence of Good Faith

10                1.    **Objection**:   AES asserts that the Debtor has failed to meet its burden of

11   demonstrating good faith, despite the heighted scrutiny to be given to transactions with insiders.

12                2.    **Debtor's Response**: As AES acknowledges, there is no prohibition on

13   sales to insiders of a debtor.  The sale to an insider is particularly true in this case which involves

14   a minority interest in a property where the other owners are parties to other business dealings with

15   one another, which in and of itself discourages non-insiders from offering an undiscounted value

16   for the interest.  Further, the Tenancy In Common agreement ("TIC") which is attached as an

17   exhibit to the Motion and is Exhibit "2" to this Response, makes clear that any offer from a third

18   party may be matched by any of the existing co-owners of the TIC.  This further depresses the

19   value of the Debtor's interest and makes it less likely (if that is even possible) that a third party

20   purchaser would come forward.  The Debtor has been forthcoming with the Court on the identity

21   of the buyer because it is aware of the heightened level of scrutiny that applies to purchases in

22   bankruptcy cases by this class of buyer.  However, as provided in the Sale Motion, if this asset

23   were sold in open court or under some auction procedure, and there was no reserve with respect

24   to a floor under which bidders would be able to go, the existing buyer or any other co-owner of

25   the property would likely purchase this asset for far less than what is being paid in this case.  The

26   Debtor is benefitting tremendously from this sale because the insider is paying far more than any

27   third party would pay for the purchase of a 10.55% interest in this Property.  It is doing so

28   because Mr. Pustilnikov protected the Debtor's position and would not agree to a sale less than

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

the full (undiscounted) value of the Debtor's interest in the property.  *Pustilnikov Decl., ¶12, pg. 19, lines 2-25.*

G.    Approval of a Private Sale is an Appropriate Exercise of the Debtor's Business Judgment and of this Court's Discretion

"Debtors argue that the Court abdicated its "obligation in § 363(b) sales [ ] to assure that optimal value is realized by the estate under the circumstances." (*Lahijani,* 325 B.R. at 288–89). As the BAP there noted: "[o]rdinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis or where there is no objection. Nevertheless, particularly in the face of opposition by creditors, the requirement of court approval means that the responsibi lity ultimately is the court's." (citation omitted)

The Court agrees it has such a responsibility. It thus observed and considered carefully the entirety of the sale process regarding the Property. Though Debtors' oppositions and arguments have at times shifted, and were raised at the 11th hour, all were closely evaluated." *In re Frantz,* 534 B.R. 378, 387-388 (Bankr., D. Idaho, 2015). *See also, In re Edwards,* 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998); *see also Wintz v. American Freightways, Inc. (In re Wintz Cos.),* 230 B.R. 840, 844 (8th Cir. BAP 1999)

The Bankruptcy Court in the *Frantz* decision described the circumstances under which a private sale under Section 363 of the Bankruptcy Code can be approved and the requisite findings with respect to such a sale made.  These include that the sale was properly noticed, that the sale price was reasonable and represented fair value for the asset being sold and that the sale was conducted in "good faith" within the meaning of Section 363(m) of the Bankruptcy Code and that the sale is not avoidable under Section 363(n) of the Bankruptcy Code.  In this case, the record overwhelmingly supports the relief requested in this Motion.  To summarize:

1.    The Debtor valued its interest in the asset in the amount of $4.3 Million in its bankruptcy schedules filed and signed under the penalty of perjury.

2.    The asset is being sold for $4,375,000.

3.    The underlying real estate in which the Debtor holds an interest is subject to more than $13.6 Million of financing that is all due and payable to East West Bank.  East West Bank is in a position to foreclose non-judicially on the Wilshire & Linden property now.  This fact and the fact that a prospective lender will only provide replacement financing for the East West Bank indebtedness if the entirety of the Wilshire & Linden property is out of bankruptcy.  The pendency

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

of a bankruptcy case for the owner of 10.55% of the Wilshire & Linden property is preventing

such refinancing from moving forward.  That is the reason for the Debtor's request that time for

the hearing on this matter be shortened.

4.      Financing the Wilshire & Linden property in this bankruptcy case is not acceptable

to any prospective lender.

5.      The Wilshire & Linden property consists of parcels whose addresses are 9740

Wilshire  Blvd, and 125 and 129 S. Linden Drive, Beverly Hills, CA 90212.  The property at 9740

Wilshire Boulevard is held under a Ground Lease.

6.      The fact that the 9740 Wilshire Boulevard property is held under a ground lease

makes obtaining financing for it more difficult than if the property were held as a fee interest.  This

is particularly the case as the Wilshire Boulevard property has a remaining lease term of 29.5 years.

7.      The TIC Agreement for the owner of the Wilshire & Linden property makes clear

that the rest of the owner have the right to match the bid of any third party bidder and use such

matching bid to successfully purchase the Debtor's interest in the Wilshire & Linden property.

8.      Selling minority interests in property is very difficult, and it is even more difficult to

find third party buyers interested in bidding or finding real estate brokers to market such interests

because real estate brokers recognize the difficulty of selling such real property interests.

9.      The Court has heard credible valuation testimony on the Wilshire & Linden property

from Mr. Pustilnikov who is the Manager of the owner of the Property.  The sale price is fair

because it exceeds the valuation given to the Debtor's interest in the Property in its bankruptcy

schedules and statement of financial affairs.

10.     At its 341A Meeting, creditors including the Opposing Creditors had an opportunity

to examine Mr. Pustilnikov about the valuation that he gave to the Debtor's interest in the Wilshire

& Linden property.  The Debtor's 341A examination took between 1-2 hours before it was

concluded.  The Opposing Creditors were informed that if they wanted to further examine the

Debtor regarding the information contained in the bankruptcy schedules and statement of financial

affairs, that they could do so through a Rule 2004 examination.  Neither Opposing Creditor has

availed themselves of that opportunity since the 341A Meeting concluded.

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

11.    The Court looks more carefully at this private sale because it is being conducted as a private sale and because the proposed buyer is an insider of the Debtor.  The Court in the exercise of its discretion can and should approve the sale because it was not marked by collusion, and the sale price being obtained by the Debtor is fair.

12.    From an accounting standpoint, it is appropriate to deduct $1,448,515 representing 10.55% of the remaining balance due to East West Bank as allocated to the Debtor's ownership interest; $242,650 from the sale proceeds representing 10.55% of the Debtor's responsibility for total advances made for the benefit of the Wilshire & Linden property which advances total $2,300,000; and $32,980 representing 10.55% of the Debtor's financial responsibility for the rent arrearages in connection with the Ground Lease of the Wilshire Property which forms part of the Wilshire & Linden property.  Rent arrearages total $312,609.00.

13.    The sale of the Debtor's 10.55% interest in the Wilshire & Linden property will generate $2.6 Million in net proceeds for the Debtor which can be used by the Debtor to move forward with proposing a Plan of Reorganization in this bankruptcy case.

There is no evidence before the Court which contradicts or disputes these thirteen (13) separate factual presentations.  Their existence clearly forms the path that this Court needs to exercise its discretion and approve the sale of the Debtor's 10.55% interest in the Wilshire & Linden property and overrule the objections filed by AES Redondo Beach, LLC and The City of Redondo Beach.

II.
**CONCLUSION**

The Objections are not well taken.  They appear to be an attempt by the Opposing Parties to use their Objections as a forum to air their grievances without evidence.  It further appears to be an opportunity by these parties to oppose the Debtor on any matter that comes before the Court for determination (witness the extraordinary bad faith Objection by AES to the Debtor's Motion to Extend Time to file Bankruptcy Schedules and Statement of Financial Affairs) on the theory that doing so will weaken the Debtor's resolve to move this Chapter 11 case forward or the Debtor's ability to successfully reorganize.  Such tactics, when they also include the demonstrable

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

1 | weakness of the Objections themselves, should not be given any credence by this Court.  Based

2 | upon the foregoing, the Debtor respectfully requests that the Court overrule the objections to the

3 | Motion, and grant the relief requested therein.

4 | DATED:  July 10, 2023                                Respectfully submitted,

5 |                                                                  **GREENSPOON MARDER LLP**

6 |

7 |                                                          By:  _____*/s/ Victor A. Sahn*_____

8 |                                                                 Victor A. Sahn
                                                                   Attorneys for 9300 Wilshire LLC,
9 |                                                                 Debtor in Possession

**GREENSPOON MARDER LLP**
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

## <u>Declaration of Leonid Pustilnikov in Support of Motion for Approval of Sale</u>

I, Leonid Pustilnikov, hereby declare:

1.     I am over the age of 18 years. I have personal knowledge of the facts stated herein. I can testify that these facts are true and correct.

2.     I am the Manager of 9300 Wilshire LLC, a Delaware limited liability company (the "Debtor").

3.     I have been the Manager of Debtor since its inception on March 9, 2018.

4.     In my capacity as Manager of Debtor, I am involved in its day-to-day operations including issues regarding financial matters, issues regarding operational concerns, and all related matters to its doing business.

5.     I make this declaration in support of the attached Response of the Chapter 11 Debtor to Objections of the City of Redondo Beach and 9300 Wilshire, LLC to Sell ("Objections") its interest in the real estate project known as Wilshire & Linden for $4,300,000. ("Sale Motion").

6.     I have personal knowledge of the facts stated herein. If called upon to do so, I could and would testify to the facts set forth herein.

7.     The Objections make a number of assertions with respect to the Sale Motion to which I respond in this Declaration.  Those responses are below.

8.     The valuation used for setting the sale price of the Debtor's interest in Wilshire & Linden was the value used to value the entirety of this Property in the Debtor's bankruptcy schedules and statement of financial affairs.  The page showing that valuation from the bankruptcy schedules is attached hereto as Exhibit "1".  As the owner's representative and Manager of the Wilshire & Linden Property, we have used a valuation $40,758,294 for purposes of selling the Debtor's 10.55% interest in it.  The basis for this valuation is the Wilshire side of the property which is a leasehold interest at present, I valued at $12,500,000 and the Linden side of the property in which the Debtor holds a fee interest was valued at $28,258,294.  The $28,258,294 is based upon the fact that this is a vacant development parcel.  I am generally familiar with the value of real estate in Beverly Hills because I have bought and sold over 12 projects in Beverly Hills in the last 5 years.  The Wilshire portion of the property was valued based upon the net

1  present value of the future cash flows as it is effectively an operating lease absent the purchase of

2  the fee.

3      9.     Generally stated, over the years of my business career, I have bought and sold over

4  100 separate properties, and the vast majority of these were in Southern California.

5      10.    As stated previously, the Wilshire & Linden property is really two properties; one

6  is improved with office building, which is on Wilshire Boulevard and the property on Linden is a

7  vacant lot.  I feel that my valuation of the Wilshire & Linden Property used in the Bankruptcy

8  Schedules (and to which I also testified at the Debtor's 341A meeting where I was questioned

9  about this Property by counsel for AES and understand that no objection to the valuation given to

10  it was received from them) is accurate and in the four months since the Bankruptcy Schedules

11  were filed, I have been able to negotiate a slightly higher price so the remaining partnership can

12  refinance without the issues plaguing Debtor.  The increased valuation is in spite of the sharp rise

13  in interest rates, the increase in costs due to inflation, and the liquidity issues facing most regional

14  banks who were the primary lenders for such properties.

15      11.    We have tried to be forthcoming with the Court on the identity of the buyer because

16  we are aware of the heightened level of scrutiny that applies to purchases in bankruptcy cases by

17  this class of buyer.  However, as provided in the Sale Motion (I am sorry that the Objections did

18  not bring these points to the Court's attention), if this asset were sold in open court or under some

19  auction procedure, and there was no reserve with respect to a floor under which bidders would be

20  able to go, the existing buyer or other co-owners would purchase this asset for far less than what is

21  being paid in this case.  The Debtor is benefitting tremendously from this sale because the insider

22  is paying far more than any third party would pay for the purchase of a 10.55% interest in this

23  Property.  It is doing so because I  protected the Debtor's position and would not agree to a sale

24  less than the full (undiscounted) value of the Debtor's interest in the property.  My years of

25  experience which I have described above and my understanding of real estate valuations and sales

26  forms the basis for my opinion that the interest being sold would not be sold to a third party buyer

27  other than at a significant discount to the Property's actual value and the value of the fractional

28  interest being sold here.

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

**GREENSPOON MARDER LLP**
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

12.     The Bankruptcy Estate will be benefitted because it will provide funds that will pay, under the Debtor's Plan of Reorganization, the claims of unsecured creditors.  The Redondo Property, at this point, does not generate revenue for the Bankruptcy Estate.  We have repeatedly informed the Court that the other properties or interests in properties owned by the Debtor will assist the Debtor in funding its Plan of Reorganization.  The sale of the Debtor's interest in the Wilshire & Linden Property is necessary because the secured debt owed by owner of that Property is in default because of this bankruptcy filing, and is now all due and payable.  Attached hereto as Exhibit "3" is the "Changes in Terms Agreement" between the borrowers on the Wilshire & Linden Property (including the Debtor) and East West Bank.  The Changes in Terms Agreement provides, without limitation, that the maturity date of the loan was extended from February 4, 2023 until May 5, 2023.  That date has come and gone and it is now necessary that the secured indebtedness on the Wilshire & Linden Property in which the Debtor holds a 10.55% interest must be refinanced.  If it is not refinanced, East West Bank will eventually and in the near term, record a Notice of Default and proceed against the Wilshire & Linden Property by way of non-judicial foreclosure sale.  This will be avoided through a sale of the Debtor's interest in the Wilshire & Linden real property which will enable the new lender that has been obtained to provide new financing which will pay East West Bank in full.  Loans on properties like the Wilshire & Linden Property are not easy to obtain because one of the two parcels (the Wilshire Boulevard parcel) is held under a Ground Lease whose expiration is in 29.5 years.  Most lenders will not finance against collateral where there is a lease and not ownership.  No lender (and certainly not the one we have found for the Wilshire & Linden Property) will provide this financing where one of the owners of the Property is in a bankruptcy case.  For this central reason, the sale of the Debtor's 10.55% interest in the Wilshire & Linden property, for a demonstrably fair price, must be approved.

13.     Given the objections to this by both the City of Redondo Beach and AES Redondo Beach, the payment of a commission under the sale of the 10.55% interest in the Wilshire & Linden Property will be withdrawn and not paid at the time the sale is approved and closes.

14.     The Tenancy in Common Agreement which is attached hereto as Exhibit "2" and is

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

also attached to the Sale Motion makes clear that the existing investors have the right to match any bid by any third party made for any interest in the Wilshire & Linden entity which owns the Wilshire & Linden property.  This is an important reason why outside third parties will not submit an offer for the Debtor's interest and is a further reasons why Debtor could not possibly find a real estate broker interested and willing to market the Debtor's 10.55% interest to such potential third party buyers.

15.     The net proceeds of the sale of the 10.55% of the Debtor's interest in the Wilshire & Linden Property will go entirely to the Debtor after deducting of the pro rata obligations being assumed by Purchaser from the sales proceeds of Debtors 10.55% interest.

16.     The Objections express confusion or dissatisfaction with the deductions made from the sales proceeds.  The calculation and a line item explanation of the deductions below should provide some additional clarity:

A.     Property Value: $40,758,294

B.     10.55% of this Valuation-$4,300,000

C.     Deductions from $4,300,000 Sales Price:

1)     EWB Loan with Remaining balance of approximately $13,730,000-10.55% of that balance equals **$1,448,515**

2)     Advances to the Property-these advances total $2,300,000 for the benefit of the entire property and were to pay operating shortfalls on the Wilshire & Linden project-9300 Wilshire's allocated portion is **$242,650**

3)     Lease Arrearage on Ground Lease for Wilshire Boulevard Parcel-total arrearage is $312,609.  9300 Wilshire's allocated portion of this is **$32,980.29.**

D.     The Total of these deductions is $1,724,145.29, leaving an "equity" to the Debtor of $2,575,855.00.  That equity has been increased to $2,600,000 which is what the Debtor will receive.

17.     <u>The Economics of this Transaction Are Not That Complex:</u> I know that counsel and

1  the clients who represent AES and the City of Redondo Beach are skilled and sophisticated,

2  particularly regarding matters pertaining to real estate.  I believe that the above explanation which

3  has been made necessary by the content of the Objections, should thoroughly resolve the

4  "accounting" issues and the balance of the issues presented regarding the calculations and

5  deductions from the purchase price.  Further, my explanation for the value of the Wilshire &

6  Linden project and the dire circumstances in which it finds itself because of the fact that its loan to

7  East West Bank was all due and payable more than two months ago has demonstrated the urgency

8  of this situation and the fairness of the consideration being paid for the Debtor 10.55% interest in

9  the Property and the deductions made from the Debtor's gross proceeds.  I also believe that I have

10  completely explained why marketing the Debtor's interest would not produce a higher offer and

11  very likely would produce a lower one because an investor bidding at a sale could (if he or she so

12  chose) to bid much less than what is being paid under the Debtor's private sale motion.

13        I declare the matters stated herein to be true under the penalty of perjury.

14        Executed this 10th day of July, 2023 at Los Angeles, California.

16        _____
          Leonid Pustilnikov

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

**<u>Declaration Of Victor A. Sahn In Support Of Reply To Objections To Sale Of Debtor's
Interest In Wilshire & Linden Real Property</u>**

I, Victor A. Sahn, hereby declare:

1.    I am a partner at Greenspoon Marder, LLP ("Greenspoon").  I submit this declaration in support of the Reply of the Chapter 11 Debtor to the Objections filed by AES Redondo Beach and The City of Redondo Beach to the proposed sale of the Debtor's 10.55% interest in the real property which is identified in the Motion and this Response as the "Wilshire & Linden" property filed by Greenspoon in this Chapter 11 case.  I am over the age of 18 years old. I submit this Declaration based upon my personal knowledge and if called as a witness, would testify to each of the matters stated herein under the penalty of perjury.

2.    I am the attorney primarily responsible for representing the Debtor in this Chapter 11 case.  I assisted the Debtor (along with personnel from my law firm) in the preparation of its bankruptcy schedules and statement of financial affairs which were filed with this Court under the penalty of perjury on March 21, 2023 at Docket No. 27, Docket No. 29 filed on March 21, 2023 and amended on April 28, 2023 as Docket No. 48.

3.    I appeared an represented the Debtor at the meeting under Section 341A of the Bankruptcy Code which was conducted by Hatty Tip, Esq. of the United States Trustee's office on March 30, 2023 at 9:00 a.m.  Appearing with me representing the Debtor was Mr. Leo Pustilnikov, who is the Debtor's Manager.  Also appearing, in addition to the United States Trustee, were attorneys Abagail V. O'Brient, Esq. for The City of Redondo Beach and Craig Wolfe, Esq. for AES Redondo Beach, LLC.  There may have been other appearances as well which I do not now recall.

4.    After questions were directed at Mr. Pustilnikov by the United States Trustee, questions were directed at him by both Mr. Wolfe and Ms. O'Brient.  The majority of the remaining time after the United States Trustee completed its examination was from Mr. Wolfe although questions were asked by Ms. O'Brient as well.  The total time taken for the conduct of the 341A examination, from my recollection, was approximately two (2) hours.  At the conclusion of the two hours of examination, the United States Trustee concluded the 341A meeting.  When

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

Mr. Wolfe asked that a continued date be established for further questioning of the Debtor, the United States Trustee responded that the 341A meeting was concluded and that if Mr. Wolfe or anyone else wanted to conduct a further examination of the Debtor, they could do so under Bankruptcy Rule 2004.  To date, neither Mr. Wolfe, Ms. O'Brient nor anyone else representing their clients have sought or conducted such an examination.

5.      During the examination, questions were directed at Mr. Pustilnikov regarding the Wilshire & Linden property and the Debtor's interest in it.  From my recollection, no one questioned the accuracy of the valuation given to this interest in this property by the Debtor which value was $4,300,000.  No question regarding this valuation has been raised since the conclusion of the 341A meeting on March 30, 2023.

I declare the matters stated herein to be true under the penalty of perjury.

Executed this 10th day of July, 2023 at Los Angeles, California.

_____*/s/ Victor A. Sahn*_____

Victor A. Sahn

GREENSPOON MARDER LLP
1875 CENTURY PARK EAST, SUITE 1900
LOS ANGELES, CALIFORNIA 90067
TEL 213.626.2311 • FAX 954.771.9264

# EXHIBIT 1

**Fill in this information to identify the case:**

Debtor name    9300 Wilshire LLC

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)   2:23-bk-10918-ER

☒ Check if this is an
    amended filing

# Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals        12/15

### Part 1:   Summary of Assets

1.   *Schedule A/B: Assets-Real and Personal Property* (Official Form 206A/B)

    1a. **Real property:**
       Copy line 88 from *Schedule A/B*...................................................................    $    29,761,156.00

    1b. **Total personal property:**
       Copy line 91A from *Schedule A/B*................................................................    $    47,041.83

    1c. **Total of all property:**
       Copy line 92 from *Schedule A/B*..................................................................    $    29,808,197.83

### Part 2:   Summary of Liabilities

2.   *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
    Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*....................    $    48,600,000.00

3.   *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

    3a. **Total claim amounts of priority unsecured claims:**
       Copy the total claims from Part 1 from line 5a of *Schedule E/F*......................................    $    0.00

    3b. **Total amount of claims of nonpriority amount of unsecured claims:**
       Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*.............................    +$    766,523.37

4.   **Total liabilities** ...........................................................................................
    Lines 2 + 3a + 3b        $    49,366,523.37

<table>
<tbody>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
</tbody>
</table>

Debtor name   9300 Wilshire LLC

United States Bankruptcy Court for the:   CENTRAL DISTRICT OF CALIFORNIA

Case number (if known)   2:23-bk-10918-ER

☒ Check if this is an amended filing

# Official Form 206A/B
# Schedule A/B: Assets - Real and Personal Property
**12/15**

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

**1. Does the debtor have any cash or cash equivalents?**

☐ No.  Go to Part 2.
☒ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | | Current value of debtor's interest |
|---|---|---|---|---|

3.   **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | Wells Fargo Bank, N.A. | Checking | 6543 | $1,367.83 |

4.   **Other cash equivalents** *(Identify all)*

5.   **Total of Part 1.**

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

$1,367.83

| Part 2: | Deposits and Prepayments |
|---|---|

**6. Does the debtor have any deposits or prepayments?**

☒ No.  Go to Part 3.
☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |
|---|---|

**10. Does the debtor have any accounts receivable?**

☐ No.  Go to Part 4.
☒ Yes Fill in the information below.

11.   **Accounts receivable**

11a. 90 days old or less:   162,945.00   -   146,981.00   = ....   $15,964.00

                     face amount                  doubtful or uncollectible accounts

Software Copyright (c) 1996-2023 Best Case, LLC - www.bestcase.com           Best Case Bankruptcy

023

| Debtor | 9300 Wilshire LLC | Case number (If known) | 2:23-bk-10918-ER |
|---|---|---|---|
| | Name | | |

| 11b. Over 90 days old: | 416,749.00 | - | 387,039.00 | =.... | $29,710.00 |
|---|---|---|---|---|---|
| | face amount | | doubtful or uncollectible accounts | | |

**12.  Total of Part 3.**

Current value on lines 11a + 11b = line 12. Copy the total to line 82.

| $45,674.00 |
|---|

**Part 4:    Investments**

**13. Does the debtor own any investments?**

☒ No. Go to Part 5.
☐ Yes Fill in the information below.

**Part 5:    Inventory, excluding agriculture assets**

**18. Does the debtor own any inventory (excluding agriculture assets)?**

☒ No. Go to Part 6.
☐ Yes Fill in the information below.

**Part 6:    Farming and fishing-related assets (other than titled motor vehicles and land)**

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☒ No. Go to Part 7.
☐ Yes Fill in the information below.

**Part 7:    Office furniture, fixtures, and equipment; and collectibles**

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☒ No. Go to Part 8.
☐ Yes Fill in the information below.

**Part 8:    Machinery, equipment, and vehicles**

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

☒ No. Go to Part 9.
☐ Yes Fill in the information below.

**Part 9:    Real property**

**54. Does the debtor own or lease any real property?**

☐ No. Go to Part 10.
☒ Yes Fill in the information below.

**55.    Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest [1] |
|---|---|---|---|---|

1 - See Attachment 9 to Amended Schedule A/B

Software Copyright (c) 1996-2023 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

024

| Debtor | 9300 Wilshire LLC | | Case number *(If known)* | 2:23-bk-10918-ER |
|---|---|---|---|---|
| | Name | | | |

| | | | | | |
|---|---|---|---|---|---|
| 55.1. | 9740-9744 Wilshire Blvd., Beverly Hills, CA 90212, and 125 & 129 S Linden Dr., Beverly Hills, CA 90212 APN: 4328-009-021 (125 S. Linden), 4328-009-007 (129 S. Linden) | Leasehold Interest & Tenancy in common | Unknown | Debtor's own estimate | $ 2,785,200.00 |
| 55.2. | 174 Kinney St & 169-177 Pier, Santa Monica, CA 90045 APN: 4288-008-008 | Tenancy in common | Unknown | Debtor's own estimate | $ 1,237,500.00 |
| 55.3. | 1100 N. Harbor Blvd. Redondo Beach, CA 90012 | Tenancy in common | Unknown | Debtor's own estimate | $ 19,688,000.00 |
| 55.4. | 1241-1251 3rd St Santa Monica, CA 90401 Via 1247 3rd Street, LLC | Ownership via SMLLC | Unknown | Debtor's own estimate | ($ 112,015.00) |
| 55.5. | 346 N Maple Dr Beverly Hills, CA 90211 via Beachside Suites, LLC | Ownership via SMLLC | Unknown | Debtor's own estimate | $ 1,554,642.00 |
| 55.6. | 1127-1137 Horn Ave West Hollywood, CA 90069 via Beachside Suites, LLC | Ownership via SMLLC | Unknown | Debtor's own estimate | $ 1,855,049.00 |
| 55.7. | 201 S Arnaz Dr Beverly Hills, CA 90211 via Beachside Suites, LLC | Ownership via SMLLC | Unknown | Debtor's own estimate | $ 1,355,264.00 |
| 55.8. | 232 S Tower Dr Beverly Hills, CA 90211 via Beachside Suites, LLC | Ownership via SMLLC | Unknown | Debtor's own estimate | $ 1,397,516.00 |

| 56. | **Total of Part 9.** | | $29,761,156.00 |
|---|---|---|---|
| | Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88. | | |

Software Copyright (c) 1996-2023 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

025

Debtor    9300 Wilshire LLC                                         Case number *(If known)*  2:23-bk-10918-ER
_____
Name

57.    **Is a depreciation schedule available for any of the property listed in Part 9?**
☒ No
☐ Yes

58.    **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
☒ No
☐ Yes

| Part 10: | Intangibles and intellectual property |
|---|---|

59. **Does the debtor have any interests in intangibles or intellectual property?**

☒ No.  Go to Part 11.
☐ Yes Fill in the information below.

| Part 11: | All other assets |
|---|---|

70. **Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

☒ No.  Go to Part 12.
☐ Yes Fill in the information below.

# EXHIBIT 2

TENANCY IN COMMON AGREEMENT

This TENANCY IN COMMON AGREEMENT (this "**Agreement**") is made as of December 23, 2020 by and between EJT WILSHIRE LINDEN, LLC, a California limited liability company ("**Tenant 1**"), 1112 INVESTMENT COMPANY, LLC, a California limited liability company ("**Tenant 2**"), 9300 WILSHIRE, LLC, a Delaware limited liability company ("**Tenant 3**"), 9300 WILSHIRE FEE, LLC, a Delaware limited liability company ("**Tenant 4**"), E.D. FLORES, LLC, a California limited liability company ("**Tenant 5**"), and DROMY 1995 FAMILY TRUST DATED DECEMBER 12, 1995 ("**Tenant 6**"), collectively, the "**Co-Owners**" and individually, each a "**Co-Owner**."

RECITALS

A.    The Co-Owners own, as tenants in common, a fee interest in the real property located at 125-129 S. Linden Dr., Beverly Hills, CA and a hold interest in the real property, with all improvements thereon, located at 9740-9744 Wilshire Blvd., Beverly Hills, CA (collectively, the "**Property**").

B.    The Co-Owners desire to enter into this Agreement to memorialize certain agreements with respect to the joint ownership of the Property.

C.    This Agreement and the activities of the Co-Owners are intended to comply with the provisions of Internal Revenue Service Revenue Procedure 2002-22, 2002-14 I.R.B. 438 (March 19, 2002) and Private Letter Ruling 201622008.

AGREEMENT

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Co-Owners hereby agree as follows:

1.    Ownership of the Property.  The Co-Owners have intended expressly to create a tenancy in common with regard to the joint ownership of the Property.  The Co-Owners shall hold title to the Property as tenants-in-common in the following undivided interests:

| | |
|---|---|
| Tenant 1 | 10% |
| Tenant 2 | 5% |
| Tenant 3 | 10.55% |
| Tenant 4 | 43.95% |
| Tenant 5 | 2.5% |
| Tenant 6 | 28% |

The interest of each Co-Owner in the Property is herein referred to as such Co-Owner's "**Ownership Interest**," and the percentage interest of the Property which each Co-Owner owns (as set forth above) is herein referred to as such Co-Owner's "**Ownership Percentage**."  Each of the Co-Owners shall be entitled to a portion of the income and cash flow from the Property, and shall bear a portion of the expenses of the Property, in accordance with such Co-Owner's Ownership Percentage.  For the avoidance of doubt, in the event the Property generates any cash available for distribution, whether from operations, refinancing, casualty or condemnation

proceeds, sale, or otherwise, each Co-Owner shall receive such cash flow in proportion to its Ownership Percentage.

2.     No Partnership.  Neither this Agreement nor the tenancy in common constitutes a partnership, joint venture, association or agency relationship and none of the Co-Owners shall have the right to bind any other Co-Owner except as expressly set forth herein.  None of the Co-Owners shall file a partnership tax return in connection with this Agreement or their ownership of the Property, or otherwise hold themselves out as partners, shareholders or members of a business entity or conduct business under a common name.  The Co-Owners shall file an election to be excluded from subchapter K of the Internal Revenue Code of 1986, as amended, in accordance with Treasury Regulations Section 1.761-2(a)(2).

3.     Management of the Property.

3.1     Management Generally.   The Co-Owners shall jointly manage the Property. Decisions regarding the Property which require unanimous consent of the Co-Owners shall include all major decisions in accordance with guidance set forth by United States Internal Revenue Service Revenue Procedure 2002-22, and shall include, without limitation, the payment of any fees to any Co-Owners or any affiliates thereof, contracts related to the Property exceeding $500,000 in value and not pursuant to a unanimously agreed upon budget, the hiring of any Property Manager (as defined and more particularly set forth in Section 3.2 below), the lease of or re-lease of all or a portion of the Property, or the sale, exchange, financing, refinancing, creation or modification of a blanket lien on the Property or other disposition of the Property in whole or in part.  For all other actions, except for those day-to-day decisions set forth in Section 3.2 below, the Co-Owners agree to be bound by the vote of a majority count of the unaffiliated Co-Owners at the time any such decision shall be made, regardless of each Co-Owner's Ownership Percentage at such time (eg, 2 out of 3 Co-Owners as of the date hereof, 3 out of 5 Co-Owners if there shall be 5 unaffiliated Co-Owners at some time in the future, etc). All leases of the Property shall be bona fide leases for federal tax purposes.  Rents paid by a lessee shall reflect the fair market value for the use of the Property and shall not be based on upon a percentage of net income from the property, cash flow, increases in equity or similar arrangements.

3.2     Day-to-Day Management.  Day-to-day management of the Property, such as collection of rent, hiring of service contractors on an as-needed basis and payment of expenses, shall be handled by Tenant 3 (the "**TiC Manager**"), subject to any consent required from the Co-Owners as described in Section 3.1.  In the event Leonid Pustilnikov is unable or unwilling to serve as the managing principal of Tenant 3, the Co-Owners agree to be bound by the vote of a majority count of the unaffiliated Co-Owners at the time any such decision shall be made, regardless of each Co-Owner's Ownership Percentage at such time (eg, 4 out of 6 Co-Owners as of the date hereof, 3 out of 5 Co-Owners if there shall be 5 unaffiliated Co-Owners at some time in the future, etc). The Co-Owners may agree, by unanimous consent, to a third party property manager (the "**Property Manager**") to manage the Property and provide such property management, construction management, asset management, leasing and debt placement services as may be required for operation of the Property and as shall be set forth in a property management agreement with an initial one (1) year term subject to annual renewal, and which shall set forth the Property Manager's duties, responsibilities and compensation.  Any annual extension of the term of the Management Agreement must be approved by all of the Co-

2

Owners. Property Manager shall be responsible for maintaining a common bank account on behalf of the Co-Owners for the collection and deposit of rents.

    4.    <u>Sale or Transfer of the Property</u>.

    (a)    <u>General</u>. Subject to Section 4(b), a Co-Owner may not make or undertake any "Transfer" (as hereinafter defined) made which: (a) violates any provision of this Agreement, (b) violates any loan that encumbers the entire Property or (c) results in more than 35 persons being tenants in common of the Property. For purposes of the foregoing sentence, a husband and wife shall be treated as a single person and all persons who acquire interests from a Co-Owner by inheritance shall be treated as a single person. A "**Transfer**," for purposes of this Agreement, shall be deemed to include, but not be limited to: (i) any sale, transfer, assignment, pledge or other disposition of, or creation of a security interest in, all or any portion of a Co-Owner's Ownership Interest, (ii) a consolidation or merger to which a Co-Owner is a party, or (iii) any sale, transfer or assignment of a general partner's interest or any portion thereof in a Co-Owner if such Co-Owner is a general partnership, or any sale, transfer, or assignment of a member's interest or any portion thereof in a Co-Owner if an such Co-Owner is a limited liability company.

    (b)    <u>Right of First Offer</u>. If a Co-Owner desires to sell its Ownership Interest to a third party purchaser, such Co-Owner (the "**Selling Co-Owner**") shall first allow the other Co-Owners (each, an "**Offeror**," and collectively, the "**Offerors**") to make an offer to purchase the Selling Co-Owner's Ownership Interest pursuant to the terms and conditions set forth in this section. A Selling Co-Owner shall provide written notice (the "**ROFO Notice**") of its intent to sell its Ownership Interest to each Offeror. The Offerors shall have the right, within fourteen (14) days after receipt of such ROFO Notice, to deliver a written offer to the Selling Co-Owner to purchase the Selling Co-Owner's Ownership Interest. If the Selling Co-Owner does not accept an offer from any of the Offerors within fourteen (14) days after receipt of such each offer, then for the following one hundred twenty (120) days, the Selling Co-Owner shall be free to sell its interest in the Property to a purchaser other than an Offeror, provided that the sale of the Selling Co-Owner's Ownership Interest to a purchaser (other than an Offeror) is for a price greater than any purchase price offered by an Offeror pursuant to this Section and is in compliance with the terms of any loan encumbering the entire Property. If a sale is not consummated within such one hundred twenty day period, then the rights of the Offerors to notice and first offer as aforesaid will again apply as to any sale occurring subsequent to such period. The rights contained herein shall be subject and subordinate to the terms of any loan documents encumbering the entire Property. For the avoidance of doubt, however, a third party purchaser shall not be deemed to include any Co-Owners, their principals, or any entities under majority common ownership or control with such Co-Owners or principals.

    5.    <u>Partition</u>. Each Co-Owner agrees that prior to instituting an action for partition that involves an actual physical division of the Property as described in California Code of Civil Procedure Sections 872.810 and 873.210 to 873.290, such Co-Owner will first offer the other Co-Owners the right to purchase its Ownership Interest at fair market value, pursuant to the provisions of Section 4 or Section 6, as applicable. Additionally, any action for partition shall be subject to any restrictions required by a lender and that are consistent with customary commercial lending practices.

029

6.    General Provisions regarding the Tenancy in Common.

6.1    Advances Among Co-Owners.    No Co-Owner nor the Property Manager may advance funds to another Co-Owner to meet expenses associated with the Property, unless the advance is recourse and is not for a period exceeding one (1) year.

6.2    Proportionate Sharing of Debt.    In the event the Co-Owners unanimously agree to obtain indebtedness to be secured by the Property, each Co-Owner shall share in such indebtedness in proportion to their Ownership Percentage.

6.3    No Business Activities.    The activities of the Co-Owners in regards to the Property shall be limited to those customarily performed in connection with the maintenance and repair of rental real estate.

6.4    Loan Agreements.    The lender of any indebtedness secured by the Property shall not be a related person to any Co-Owner, the Property Manager, any lessee of the Property or any affiliate of the Co-Owner, Property Manager or any lessee of the Property, unless otherwise unanimously agreed to by the Co-Owners in writing.

7.    Miscellaneous.

7.1    Entire Agreement; Amendments.    This Agreement constitutes the final, complete, and exclusive statement of the terms of the agreement between the Co-Owners with respect to the Property and may be amended only by an agreement in writing signed by the party to be charged.

7.2    Partial Invalidity.    If a court or arbitrator of competent jurisdiction holds any portion of this Agreement to be invalid or unenforceable in whole or in part for any reason, the validity and enforceability of the remaining clauses, or portions of them, shall not be affected.

7.3    Successors and Assigns.    Subject to the restrictions on transfer contained herein, this Agreement shall bind and benefit the Co-Owners to this Agreement and their legal representatives and successors in interest.

7.4    Governing Law.    This Agreement shall be construed and enforced in accordance with the laws of the State of California.

7.5    Attorneys' Fees.    In the event any party to this Agreement brings an action against another to enforce or interpret this Agreement, then the non-prevailing party shall pay the attorney's fees and costs and expert witness fees and costs of the prevailing party.

7.6    Counterparts.    This Agreement may be executed in separate counterparts.

7.7    Legal Counsel; Mutual Drafting.    Each party hereto recognizes that this is a legally binding contract, and acknowledges and agrees that he, she or it, as applicable, has read and understands this Agreement, is entering into it freely and voluntarily, and has had ample opportunity to consult with legal counsel of his, her or its choice. Each party has cooperated in the drafting, negotiation and preparation of this Agreement. Hence, in any

4

030

construction to be made of this Agreement, the same shall not be construed against any party on the basis of that party or its counsel being the drafter of such language.

*[Remainder of page intentionally blank]*

5

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the day and year first above written.

**CO-OWNERS**:

TENANT 1:

EJT WILSHIRE LINDEN, LLC,
a California limited liability company

By: _____
        Eli Taban, Manager


TENANT 2:

1112 INVESTMENT COMPANY, LLC,
a California limited liability company

By: _____
        Ely Dromy, Manager


TENANT 3:

9300 WILSHIRE, LLC,
a Delaware limited liability company

By: _____
        Leonid Pustilnikov, Manager


TENANT 4:

9300 WILSHIRE FEE, LLC,
a Delaware limited liability company

By:    505 Investment Company, LLC
Its:    Managing Member

        By: _____
                Ely Dromy, Manager

Signature page to
Tenancy In Common Agreement

TENANT 5:

E.D. FLORES, LLC,
a California limited liability company

By: _____
       Ely Dromy, Manager

TENANT 6:

DROMY 1995 FAMILY TRUST DATED DECEMBER 12, 1995

By: _____
       Ely Dromy, Trustee

By: _____
       Judy Dromy, Trustee

2

EXHIBIT 1

DESCRIPTION OF THE PROPERTY

125 - 129 South Linden Fee:

LOTS 38, 39, AND 40 OF TRACT NO. 6648 IN THE CITY OF BEVERLY HILLS, IN THE
COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN
BOOK 71, PAGE 48 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY.

APN(s): 4328-009-007 and 4328-009-021

9740-9744 Wilshire Leasehold:

A leasehold interest in a five (5) story office building located at 9740 and 9744 Wilshire Boulevard in the City of Beverly Hills, County of Los Angeles, State of California, with a legal description for the land thereunder of:

LOTS 35 AND 36 OF TRACT 6648, IN THE CITY OF BEVERLY HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 71 PAGE 48 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 4328-009-003

The leasehold interest is more particularly described as:

A leasehold estate as created by that certain unrecorded lease dated August 29, 1957, executed by Security-First National Bank of Los Angeles, as Trustee under the Will of Grace K. Burt, deceased as lessor and 9740 Wilshire Building, a Limited Partnership as lessee, as disclosed by a Lease – Short Form for Recording recorded September 27, 1957 as Instrument No. 1606 in Book 55719, Page 14 of Official Records. Said lease was amended and assigned as follows:

a. that certain unrecorded Amendment to Lease dated May 29, 1959;

b. that certain Amendment to Lease dated May 29, 1959 and recorded June 24, 1959 as Document No. 1852;

c. that certain Assignment of Undivided Interest in Lease dated January 3, 1961 and recorded
January 4, 1961 as Document No. 1567;

d. that certain Assignment of Undivided Interest in Lease dated January 3, 1961 and recorded
January 4, 1961 as Document No. 1568;

e. those certain unrecorded Assignment of Lessee's Interest in Lease dated March 2, 1979;

f. those certain unrecorded Assignments of Lessee's Interest in Lease dated March 21, 1980;

g. that certain unrecorded Assignment of Lessee's Interest in Lease dated March 26, 2003;

4

035

h. that certain unrecorded Assignment of Leasehold Interest dated July 27, 2012;

    i.   that certain Assignment of Lease dated October 25, 2019 and recorded October 28, 2019 as Document No. 20191155144;

    j.   that certain Assignment of Leasehold Interest dated December 28, 2020 and recorded January ___, 2021 as Document No. _____;

036

# EXHIBIT 3

# CHANGE IN TERMS AGREEMENT

**Borrower:**  9300 Wilshire Fee LLC; 9300 Wilshire LLC; Dromy  **Lender:**  East West Bank
1995 Family Trust Dated December 12, 1995; 1112         Loan Servicing Department
INVESTMENT COMPANY, LLC; and E.D. Flores,               9300 Flair Drive, 6th Floor
LLC                                                     El Monte, CA 91731
9744 Wilshire Blvd, Suite 203
Beverly Hills, CA 90212

**Principal Commitment Amount:  $14,932,783.55**                    **Date of Agreement:  February 24, 2023**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** The Promissory Note dated **August 8, 2019,** for Loan Number 31603700 in the original Principal Amount of $18,500,000.00, along with any and all subsequent Change in Terms Agreements (collectively referred to as "Note").

**DESCRIPTION OF CHANGE IN TERMS.**

The maturity date of the Note is hereby extended from February 4, 2023 to **May 5, 2023.**

The section entitled **"VARIABLE INTEREST RATE"** is hereby deleted in its entirety.

The Borrower will pay one interest payment due on February 8, 2023, at the current interest rate on the unpaid principal balance.

Effective February 8, 2023, the interest rate of the loan is hereby amended from a variable interest rate to **a fixed rate of 7.600%,** and the section entitled **"PAYMENT"** are hereby amended and restated as follows:

**PAYMENT.**  Borrower will pay the outstanding principal amount of $13,600,000.00 on this loan as of the date of this Agreement in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph:  2 monthly consecutive principal and interest payments of $105,352.39 each, beginning March 8, 2023, with interest calculated on the unpaid principal balances using an interest rate of 7.600%; and one principal and interest payment of $13,635,811.03 on May 5, 2023, with interest calculated on the unpaid principal balances using an interest rate of 7.600%.  This estimated final payment is based on the assumption that all payments will be made exactly as scheduled; the actual final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts on this loan.  If additional amount(s) are advanced pursuant to the section entitled "TI/LC HOLD BACK" of the Business Loan Agreement dated August 8, 2019 executed by and between Lender and Borrower, the monthly payments and final payment stated above will increase/re-calculated based upon a 23-year amortization schedule.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest as shown on the most recent statement or bill provided to Borrower (if no statement or bill has been provided for any reason, it shall be applied to the unpaid interest accrued since the last payment); then to principal; then to any late charges; and then to any unpaid collection costs. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.**  Interest on this loan is computed on a 365/360 basis; that is, by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

The sections entitled **"BUSINESS DAY"** and **"DETERMINATION DATE"** are hereby deleted in their entirety.

**CONTINUING VALIDITY.**  Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect.  Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms.  Nothing in this Agreement will constitute a satisfaction of the obligation(s).  It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement.  If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it.  This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**PRIOR TO SIGNING THIS AGREEMENT, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT.  EACH BORROWER AGREES TO THE TERMS OF THE AGREEMENT.**

**BORROWER:**

**9300 WILSHIRE FEE LLC**

**505 INVESTMENT COMPANY, LLC, Managing Member of 9300 Wilshire Fee LLC**

By: _____
**Ely Dromy, Managing Member of 505 Investment Company, LLC**

037

**9300 WILSHIRE LLC**

By: _____

Leonid Pustilnikov, Manager of 9300 Wilshire LLC

**DROMY 1995 FAMILY TRUST DATED DECEMBER 12, 1995**

By: _____
Ely Dromy, Trustee of Dromy 1995 Family Trust
Dated December 12, 1995

By: _____
Judy Dromy, Trustee of Dromy 1995 Family Trust
Dated December 12, 1995

**1112 INVESTMENT COMPANY, LLC**

By: _____
Ely Dromy, Manager of 1112 INVESTMENT
COMPANY, LLC

**E.D. FLORES, LLC**

By: _____
Ely Dromy, Manager of E.D. Flores, LLC

LaserPro, Ver. 22.2.10.016  Copr. Finastra USA Corporation 1997, 2023.   All Rights Reserved.   - CA  E:\PROD\LOAN\DOC\CFI\LPL\D20C.FC   TR-30488   PR-188 (M)

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1875 Century Park East, Suite 1900, Los Angeles, CA 90067.

A true and correct copy of the foregoing document entitled (*specify*):    **DEBTOR'S OMNIBUS REPLY TO OPPOSITIONS OF AES REDONDO BEACH, LLC AND THE CITY OF REDONDO BEACH TO MOTION OF CHAPTER 11 DEBTOR UNDER 11 U.S.C. §363 AND BANKRUPTCY RULE 6004 FOR AUTHORIZATION TO SELL DEBTOR'S INTEREST IN REAL PROPERTY AT WILSHIRE & LINDEN IN BEVERLY HILLS, CALIFORNIA TO E.D. FLORES, LLC OR ITS NOMINEE BY PRIVATE SALE; DECLARATIONS OF LEONID PUSTILNIKOV AND VICTOR A. SAHN, ESQ. IN SUPPORT OMNIBUS REPLY**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>July 10, 2023</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following

- **Melissa Boey** melissa.boey@morganlewis.com
- **Steve Burnell** Steve.Burnell@gmlaw.com, sburnell@ecf.courtdrive.com; sburnell@ecf.inforuptcy.com;cheryl.caldwell@gmlaw.com;denise.walker@gmlaw.com
- **Clifford P Jung** clifford@jyllp.com, ry@jyllp.com; jessica@jyllp.com
- **Abigail V O'Brient** avobrient@mintz.com, docketing@mintz.com; DEHashimoto@mintz.com; nleali@mintz.com; ABLevin@mintz.com
- **Alan G Tippie** Alan.Tippie@gmlaw.com, atippie@ecf.courtdrive.com; Karen.Files@gmlaw.com,patricia.dillamar@gmlaw.com,denise.walker@gmlaw.com
- **Victor A Sahn** victor.sahn@gmlaw.com, vsahn@ecf.courtdrive.com; pdillamar@ecf.courtdrive.com; patricia.dillamar@gmlaw.com, Karen.Files@gmlaw.com
- **United States Trustee (LA)** ustpregion16.la.ecf@usdoj.gov
- **Craig A Wolfe** craig.wolfe@morganlewis.com
- **Hatti K Yip** hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

☐ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _ 2023 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>July 10, 2023</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

## Via Messenger
Honorable Ernest M. Robles
U.S. Bankruptcy Court - Roybal Federal Building
255 E. Temple Street, Suite 1560
Los Angeles, CA 90012

☐ Service information continued on attached page.

---

PMD 54859925v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                 **F 9013-3.1. PROOF.SERVICE**

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 10, 2023 | Patricia Dillamar | /s/ Patricia Dillamar |
|---|---|---|
| Date | Printed Name | Signature |