1

```
 1                    UNITED STATES BANKRUPTCY COURT

 2                    CENTRAL DISTRICT OF CALIFORNIA

 3                              -oOo-

 4    In Re:                      ) Case No. 2:23-Bk-10918-ER
                                  ) Chapter 11
 5    9300 WILSHIRE LLC           )
                                  ) Los Angeles, California
 6                      Debtor.   ) Tuesday, July 11, 2023
      _____ ) 10:00 AM
 7
                                    HEARINGRE: [77] MOTION FOR
 8                                  SALE OF PROPERTY OF THE
                                    ESTATE UNDER SECTION 363(B) -
 9                                  NO FEE MOTION OF CHAPTER 11
                                    DEBTOR UNDER 11 U.S.C. § 363
10                                  AND BANKRUPTCY RULE 6004 FOR
                                    AUTHORIZATION TO SELL
11                                  DEBTOR'S INTEREST IN REAL
                                    PROPERTY AT WILSHIRE & LINDEN
12                                  IN BEVERLY HILLS, CALIFORNIA
                                    TO E.D. FLORES, LLC OR ITS
13                                  NOMINEE BY PRIVATE SALE;
                                    DECLARATION OF LEONID
14                                  PUSTILNIKOV IN SUPPORT OF
                                    MOTION; MEMORANDUM OF POINTS
15                                  AND AUTHORITIES

16                     TRANSCRIPT OF PROCEEDINGS
                   BEFORE THE HONORABLE ERNEST ROBLES
17                  UNITED STATES BANKRUPTCY JUDGE

18    APPEARANCES:
      For the Debtor:             VICTOR A. SAHN
19                                  Greenspoon Marder LLP
                                    1875 Century Park East
20                                  Suite 1900
                                    Los Angeles, CA 90067
21                                  (213)626-2311

22

23

24

25
```

2

```
1    For the Secured Creditor:   MELISSA Y. BOEY
                                 JOSHUA DORCHAK
2                                CHARLES MALARET
                                 CRAIG A. WOLFE
3                                Morgan, Lewis & Bockius LLP
                                 300 South Grand Ave.
4                                22 Floor
                                 Los Angeles, CA 90071
5                                (213)612-2500

6    For the Bank:               CLIFFORD JUNG, ESQ.
                                 Jung & Yuen LLP
7                                888 S. Figueroa Street
                                 Suite 720
8                                Los Angeles, CA 90017
                                 (213)689-8880
9
     For the City:               ABIGAIL O'BRIENT
10                               Mintz, Levin, Cohn, Ferris,
                                 Glovsky & Popeo, P.C.
11                               2049 Century Park East
                                 Suite 300
12                               Los Angeles, CA 90067
                                 (310)226-7886
13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17    Court Recorder:                LYDIA GONZALEZ
                                     United States Bankruptcy Court
18                                   Edward R. Roybal Federal Building
                                     255 East Temple Street
19                                   Room 940
                                     Los Angeles, CA 90012
20                                   (855)460-9641

21    Transcriber:                   COLIN RICHILANO
                                     eScribers, LLC
22                                   7227 N. 16th Street
                                     Suite #207
23                                   Phoenix, AZ 85020
                                     (800) 257-0885

24
      Proceedings recorded by electronic sound recording;
25    transcript provided by transcription service.

4

1     LOS ANGELES, CALIFORNIA, TUESDAY, JULY 11, 2023, 10:22 AM

2                              -oOo-

3        (Call to order of the Court.)

4            THE COURT:  All right.  Next on calendar, item 115.

5    This is 9300 Wilshire LLC.  I will take, first, appearances in

6    the courtroom, and then, we'll go to the telephone.

7            MR. SAHN:  Your Honor, good morning.  Victor Sahn of

8    Greenspoon Marder for the Chapter 11 debtor-in-possession, and

9    we thank you for the shortened time hearing.

10           THE COURT:  Thank you.

11           MR. WOLFE:  Good morning, Your Honor.  Craig Wolfe,

12   Morgan, Lewis and Bockius for AES, the secured creditor.

13           THE COURT:  Thank you.

14           MS. O'BRIENT:  Good morning, Your Honor.  Abigail

15   O'Brient of Mintz appearing on behalf of the City of Redondo

16   Beach.

17           THE COURT:  Thank you.  All right.  And let me now

18   turn to telephonic appearances, pardon me.  Melissa Boey?

19           MS. BOEY:  Good morning, Your Honor.  I will not be

20   speaking today.  I will just be listening in.

21           THE COURT:  Thank you very much.

22           MS. BOEY:  Thank you, Your Honor.

23           THE COURT:  Joshua Dorchak?

24           MR. DORCHAK:  Good morning, Your Honor.  Joshua

25   Dorchak of Morgan Lewis.  I'll also be listening this morning.

Case 2:23-bk-10918-VZ   Doc 103   Filed 07/12/23   Entered 07/12/23 14:53:35   Desc
Main Document     Page 5 of 26
**9300 Wilshire Llc**

5

1          THE COURT:  Thank you.  Curtis Jung?

2          MR. JUNG:  No, Your Honor.  This is Clifford Jung

3  appearing on behalf of East West Bank, and we also will be

4  listening in.

5          THE COURT:  All right.  And Charles Malaret?

6          MR. MALARET:  Good morning, Your Honor.  Charles

7  Malaret on behalf of Morgan Lewis.  I also will just listen in

8  to this hearing.

9          THE COURT:  All right.  Thank you very much.  Now, the

10  Court has issued its tentative ruling in this matter, so if you

11  want to be heard on that, Mr. Sahn?

12          MR. SAHN:  Thank you, Your Honor.  Your Honor, we, of

13  course, have reviewed your tentative ruling.  Thank you for the

14  time you've taken and wanted to make some comments and,

15  candidly, perhaps a suggestion.

16          Your Honor, one of the documents that is attached to

17  our reply that was filed, I believe, yesterday, docket number

18  96, pages 43 of 46 contain, it's Bates stamp page number 37 at

19  the bottom and 43 of 46 at the top, it is the changes and terms

20  agreement between East West Bank and the borrower, or

21  borrowers, and it provides for an agreed upon interest rate on

22  the note.

23          The note interest rate started, I believe, at about

24  4.5 percent back in 2019, and as of March of this year, it was

25  increased to 7.6 percent.  And it looks like the monthly

Case 2:23-bk-10918-VZ    Doc 103    Filed 07/12/23    Entered 07/12/23 14:53:35    Desc
Main Document        Page 6 of 26
**9300 Wilshire Llc**

6

1    payment for that is $105,352.39.  That's what the document

2    says.

3            What is not before you, Your Honor, and that's my

4    fault, is the provision in the promissory note that controls

5    what the interest rate under the note will be.  I'm happy to

6    show it to Your Honor and to the counselors.  I'm sure not

7    surprising to any of us, at least it shouldn't be, that the

8    interest rate after default, which is where we are now, is five

9    points in excess of the rate provided for in the note.

10           So the note, as we speak and since the spring of this

11   year, has been accruing interest at 12.6 percent, unless the

12   base rate has adjusted upward because interest rates have

13   increased since March.  That is a monthly accrual at the 12.6

14   percent rate of 174,960 dollars.

15           That is what is accruing each month.  That is what

16   needs to be paid each month.  And to the extent it is paid, as

17   expenses for this property have been by the insiders who have

18   been funding this property's costs, 10.55 percent of that

19   monthly accrual of 174,960 dollars will be charged to the

20   debtors 10.55 percent ownership interest in the property.

21           That is a monthly accrual and a monthly loss to the

22   debtor, which is material, we believe, which is significant and

23   notwithstanding Your Honor's observation on page 24 of 27 of

24   the tentative ruling that there is a significant equity

25   cushion.  Therefore, the secured creditor would not be entitled

Case 2:23-bk-10918-VZ   Doc 103   Filed 07/12/23   Entered 07/12/23 14:53:35   Desc
Main Document     Page 7 of 26
**9300 Wilshire Llc**

7

1   to stay relief.

2          If that is true, and I certainly accept Your Honor's

3   observation subject to East West Bank's rights, there is a

4   significant loss that is running as a result of the time which

5   has passed and which continues to pass.  And we wanted to point

6   that out to Your Honor as something that is, we believe,

7   significant prejudice that exists by reason of the status quo

8   being maintained.

9          Your Honor, on page 23 of 27 of your tentative ruling,

10  and I'll make these points as quickly as I can, you indicate

11  that the insider is subjected to a higher level of scrutiny,

12  which we agree with, which is what we've said, and that we've

13  failed to establish that the sale is in the best interest of

14  the estate because the only evidence of value has been the

15  testimony of Mr. Pustilnikov.

16         Mr. Pustilnikov did testify, as Your Honor indicates,

17  but as we point out in the motion, at a time when this was not

18  before the Court, when Mr. Pustilnikov signed the debtor's

19  bankruptcy schedules and statements of financial affairs in

20  March of this year, when there was no motion pending, no

21  valuation testimony, no contested matter that might have

22  compelled a different valuation or a more litigation-friendly

23  valuation, or whatever words one might want to use from a

24  characterization standpoint, he valued the property at 40

25  million dollars in his schedules.

8

1          He testified to it at the 341(a) meeting of the

2    debtor.  The two counsel to my left were there.  They

3    questioned him.  The meeting went on for two hours, as we

4    pointed out to Your Honor in our reply, and there was no

5    question raised by the United States Trustee or anyone else

6    that the value of this property, which was shown to be 40

7    million dollars and the debtor's interest in it at 10.55

8    percent of that, was anything other than accurate at that time.

9          And Mr. Pustilnikov, in giving his opinion for

10   purposes of this motion, increased that value by 750,000

11   dollars since March, and the increase probably would have been

12   more if interest rates have not been rising as they have been,

13   which has been a depressant to the market even though real

14   estate is still valuable and would otherwise be appreciating if

15   the interest rates weren't doing what they have been doing

16   during the better part of this calendar year.

17         So we think you do have much more disinterested

18   testimony.  We've put the bankruptcy schedules in front of you

19   and shown that that's the value that was given to the debtor's

20   interest in this property and to this property at a time when

21   there was no reason other than to tell the truth.  So we would

22   take issue as a result with that portion of your tentative

23   ruling on page 23 of 27, which I've just discussed.

24         The second or the next thing that I want to discuss,

25   and it's, I guess, a little surprising and I'd be saying this

Case 2:23-bk-10918-VZ   Doc 103   Filed 07/12/23   Entered 07/12/23 14:53:35   Desc
Main Document     Page 9 of 26
**9300 Wilshire Llc**

9

1  as I have many times over the years representing bankruptcy

2  trustees in Chapter 7 cases, just as I'm representing a

3  debtor-in-possession in this case, I have never seen and I've

4  had many, many sales of fractional interest in real estate and

5  in businesses, I have never seen the buyer of a minority

6  interest in a partnership, which is co-owned by other investors

7  who are together invested in many other partnerships, I have

8  never seen a third-party bid for it ever, especially when there

9  are matching rights that the debtor would have, or that the

10 investors would have, and the exercise of those matching rights

11 would allow them to prevail as the buyer in the face of,

12 perhaps in this case, a higher and better offer than the one

13 that is before you for approval.

14         So when Your Honor indicates at the bottom of page 23

15 of 27, "On the other hand, it is equally plausible that the

16 opportunity to acquire an interest in real estate located in a

17 high-end commercial district in Beverly Hills would be

18 compelling enough to motivate a third-party to bid,

19 notwithstanding the issues regarding fractional ownership," I

20 don't know what else to do other than disagree --

21         THE COURT:  Well, I did say --

22         MR. SAHN:  -- based on my own experience.

23         THE COURT:  I did say plausible.  I didn't say

24 probable.

25         MR. SAHN:  And --

10

1    THE COURT:  It's within the realm of, it's

2    conceivable.

3    MR. SAHN:  And Your Honor, but what adds to that is

4    that there are two parcels.  One parcel that's improved is

5    under a ground lease that has twenty-nine and a half years left

6    to run.  And the second parcel is unimproved.  It's vacant and

7    is un-entitled.

8    THE COURT:  All right.  May I make a suggestion?

9    Because it seems to me that the issue still for the Court, even

10    after your exposition, is getting a fair market value for the

11    interest.  And --

12    MR. SAHN:  I was going to make --

13    THE COURT:  And if we can get somebody independent of

14    the debtor, or the debtor's principal or controlling interest,

15    to give that to the Court, I think that would change the

16    complexion of this motion.

17    MR. SAHN:  Your Honor, it's exactly the suggestion I

18    was going to make and perhaps improve upon it to this degree.

19    We would, within thirty days, maybe twenty-one, but certainly

20    no more than thirty, put an appraisal before you with a

21    declaration.

22    And if the appraisal were less than 40,750,000

23    dollars, which is the basis for the offer in this case, the

24    buyer would pay the same that it's paying, offering to pay now,

25    whatever that number is, 4.3 million dollars I'll just use for

Case 2:23-bk-10918-VZ   Doc 103   Filed 07/12/23   Entered 07/12/23 14:53:35   Desc
Main Document     Page 11 of 26
**9300 Wilshire Llc**

11

1  the sake of discussion.

2         If the appraisal is more than 40,750,000 dollars and

3  4.3 million is the correct number that I've just given you,

4  then it will pay the increase.  In other words, 10.55 percent

5  of the increased valuation which the appraiser provides to the

6  Court.

7         And I think with that, which is the reason I've come

8  up here to talk to you, I think with that, we would be happy

9  to, if Your Honor allows, to set a continued hearing some

10  period of time after the appraisal report is filed, giving

11  counsel an opportunity to object to it, comment upon it, or

12  whatever they wish to do as far as the contents of the report

13  are concerned.  And then, we could have a hearing after that,

14  or continued hearing, I should say, on the sale after that

15  date.

16         THE COURT:  Very well.  Mr. Wolfe?

17         MR. SAHN:  Thank you, Your Honor.

18         THE COURT:  Thank you, Mr. Sahn.

19         MR. WOLFE:  Again, good morning, Your Honor, and

20  thanks for having us today.  A few issues, and I don't intend

21  to state everything that has been in the papers.  I think we're

22  kind of generally in the right place here.  I do have a couple

23  of comments, though, and one is that when you look at sort of

24  the scale of this case as represented by the debtor and its

25  papers throughout, this is a complex, heavily complicated case.

Case 2:23-bk-10918-VZ   Doc 103   Filed 07/12/23   Entered 07/12/23 14:53:35   Desc
Main Document   Page 12 of 26
**9300 Wilshire Llc**

12

1   And what we just heard was that there was a tiny little sliver

2   of a monthly payment that, in my opinion, is pretty

3   insignificant when we're talking about a piece of property that

4   has been represented to, or a property in the estate that's

5   represented to, be worth hundreds of millions of dollars, or at

6   least well over 100 million dollars to the estate, which we

7   question net value.

8          But I just don't buy the argument that the harm that

9   justifies this expedited process is that significant to

10  truncate what would be a normal process in selling a real

11  property interest.  And that would be that it would be listed

12  with a broker, and there would be a sufficient marketing

13  period.  And if that process does not turn up anything and if

14  it's been done properly, then I think we have a lot more

15  information upon which we can evaluate and decide.

16         I understand the argument that this is important, that

17  it's going to cost the debtor a little bit of money to carry

18  this, but the debtor has known about this problem for some

19  time.  And we're just hearing about it, and we're hearing about

20  it on an emergency basis.  And so I just -- we don't see and we

21  are going to be far and away the largest creditor here.  We

22  don't see the urgency.

23         We are also deeply concerned about what the overall

24  strategy is in this case, not just with the Redondo Power Plant

25  that we are involved in but also the general strategy of the

Case 2:23-bk-10918-VZ   Doc 103   Filed 07/12/23   Entered 07/12/23 14:53:35   Desc
Main Document     Page 13 of 26
**9300 Wilshire Llc**

13

1  case.  We have deep concerns that we're going to have an

2  incremental sell off of these interests that are going to end

3  up in the hands of an insider.  And all that's going to be left

4  at the end of the day is the Redondo Plant.  And then that's

5  when they're going to say, okay, we're done.  But by that time,

6  there is going to be tremendous burden put on that plant.

7  There is going to be delay in the process.  And I don't think

8  that that is a good result for the public, nor do I think it's

9  a good result for AES.

10        So our concern here is, we don't think that the harm

11  in delaying this is significant.  We do think that it should be

12  marketed.  We think there probably is some value in the

13  appraisal, but not exclusively, and that this should be done in

14  a more conventional way, at least to give us some comfort that

15  that this has been done correctly and our concerns about

16  disposing of assets and getting them in the hands of insiders

17  so this thing can be abandoned at the end of the day after the

18  harm and the delay and the cost has been shifted to others.

19        So that is our concern.  And --

20        THE COURT:  Well, let me ask this.

21        MR. WOLFE:  Yeah.

22        THE COURT:  If the Court is inclined to go the

23  appraisal route, because Mr. Sahn's memory's probably better

24  than mine, but I don't recall whether or not I ever approved a

25  sale of a percentage interest in this type of asset, so I just

Case 2:23-bk-10918-VZ    Doc 103    Filed 07/12/23    Entered 07/12/23 14:53:35    Desc
Main Document      Page 14 of 26
**9300 Wilshire Llc**

14

1    can't recall.  But if we go the appraisal route and if we allow

2    your client to have some input, as well as the city entity, as

3    to the entity that will be appraising this interest, whether we

4    can't get to a point where we can just dispose of this

5    incremental issue and then move on with the case.

6           MR. WOLFE:  Well, I think our concern is the latter

7    one, right?  Then, we're going to move on to the next property

8    is our concern, right?  And we've all seen appraisals that

9    swing wildly in values.  And I'm not convinced that the delta

10   here that moves the needle to make the decision ultimately is

11   significant enough to where that couldn't be captured within

12   the valuation swing of a single appraisal, and that's our

13   concern.

14          Our concern also is, like I've stated already, just

15   the issue of insider-to-insider transaction and brokered by an

16   insider.  It's just highly unusual.  The burden is tremendous

17   here, in our view, to demonstrate that this has been done in a

18   normal market method, and I am not convinced that a single

19   appraisal is going to get us to the place we need to be.

20          THE COURT:  Well, the appraisal is a recognized market

21   tool to develop the idea of the fair market value of the

22   property.

23          MR. WOLFE:  No, I understand.  I understand.  And they

24   will often have ranges of values.  And I mean, we'll see, I

25   guess, is the answer what that appraisal says.  But I think the

15

1    delta, or the difference, and again, I'm projecting here or

2    trying to foresee the future, could be close enough to where we

3    just -- it's not going to be helpful to us.  And at that point

4    in time, we will have lost more time, lost four months already.

5    How much more time are we going to lose to get to that right

6    answer?

7            THE COURT:  All right.  Let's see.  Ms. O'Brient?

8            MS. O'BRIENT:  I'll be very brief, Your Honor, because

9    the City did not oppose the fact of the sale itself.  We think

10   the path that the Court has charted this morning is a step in

11   the right direction.  We'll, of course, reserve all of our

12   rights on the issues that we set forth in our limited objection

13   if the Court ultimately continues the hearing on this matter.

14           THE COURT:  All right.  Thank you very much.  Mr.

15   Sahn, anything else?

16           MR. SAHN:  Your Honor, just for the record, I have no

17   clue where the argument or perception comes from that we're

18   going to sell these properties off piecemeal.  There's no basis

19   to it.  My client has paid toward his client's indebtedness 37

20   million dollars, so my client has a funny way of showing he's

21   trying to get a free ride in a bankruptcy case.

22           He has been paying on all these debts, on all these

23   properties, including this one, for quite some time.  So we're

24   not going to sell everything off and then abandon this property

25   back to AES.  That's not going to happen.  In fact, it's just

Case 2:23-bk-10918-VZ   Doc 103   Filed 07/12/23   Entered 07/12/23 14:53:35   Desc
Main Document     Page 16 of 26
**9300 Wilshire Llc**

16

1   the opposite.

2          As Mr. Wolfe well knows, there are proceedings ongoing

3   in at least two different forums with respect to the

4   development of this property that the debtor wishes to pursue.

5   And those proceedings are contested proceedings that involve, I

6   think, more the City of Redondo Beach than AES, but my client

7   is pursuing this vigorously and will continue to do so.  We

8   think they certainly -- so that's point one.

9          Point two to the point of this motion, we're going to

10  file our appraisal in thirty days.  If they want to get their

11  own appraisal, they can do so.  Your Honor can compare and

12  contrast, and you are the finder of fact with regard to value.

13  If they want to contest it, they're welcome to do so.  We

14  invite them to do so, and they certainly are able and would

15  have standing to do so and put before this Court what they

16  think the property is worth after we file our appraisal.  If

17  they disagree with us, they can file and have prepared their

18  own appraisal report.

19          THE COURT:  If we wanted to -- if the Court was

20  inclined to split the baby in this, would there be any blowback

21  to going the appraisal route but also going the sale route as

22  well?  Just so that during this interim period, if it's for

23  sale and somebody comes in and says, we'll go ahead and bid for

24  it, you bring that bid to the Court.

25          MR. SAHN:  Your Honor, we can try and do that.  We

Case 2:23-bk-10918-VZ    Doc 103    Filed 07/12/23    Entered 07/12/23 14:53:35    Desc
Main Document    Page 17 of 26
**9300 Wilshire Llc**

17

1  personally don't believe that any reputable or otherwise real

2  estate broker who mortgage and sells real estate in Beverly

3  Hills would accept this listing because of the nature of the

4  interest being sold.  If the listing were to be accepted, it

5  would not be on a contingency fee basis or a commission basis

6  because of the unlikelihood of a sale.  It would be on some

7  kind of hourly basis.

8         So I think it's something we can try and do.  We

9  certainly are very familiar with the brokers who are -- brokers

10 likely to find buyers for an interest in this property.

11         THE COURT:  Um-hum.

12         MR. SAHN:  But we just don't think any of them will

13 accept a listing of a 10.55 percent interest in a closely held

14 partnership that owns this property.  So we think the appraisal

15 route is, especially given the fact that we're establishing a

16 floor of the current offer that's before the Court, no matter

17 what the appraisal comes in at, and I think that gives the most

18 protection that is tangible and real that we can possibly

19 provide.

20         THE COURT:  All right.  Well, what I'm inclined to do

21 is the following.  I'm going to take this under submission

22 because I'm going to fashion an order that has some dates, some

23 provisions in it that I don't want to skip if I do that on the

24 bench here, but I'm inclined to take both routes.

25         I mean, we can, I think, offer it to a set of brokers

Case 2:23-bk-10918-VZ   Doc 103   Filed 07/12/23   Entered 07/12/23 14:53:35   Desc
Main Document     Page 18 of 26
**9300 Wilshire Llc**

18

1    and see if they'll take it on, and if so, what their conditions

2    would be, and we'll have this listed for sale, and then,

3    somebody can bid on it.  In the meantime, I think we will go

4    the appraisal route so that the debtor can select its appraisal

5    entity and so can any interested party.

6            We'll bring that before the Court at a date that the

7    Court will set.  As all of you know, I won't be here and the

8    cases are going to be redistributed, my understanding is the

9    beginning of August.  Perhaps, I can keep one or two of them

10   until I leave the bench in the end of September, and this may

11   be one of them.  I'm not sure.

12           But I like to try and keep the ball rolling because

13   these things can sometimes fall into a sort of interstitial

14   area between the assignment of the judge and the actual first

15   hearings before that judge.  So let me work on that as well,

16   but that's the route I'm going to take, so I'm not going to

17   approve the sale here at this point.

18           All right.  You had something else, counsel?

19           MR. WOLFE:  Yeah, Your Honor.  And we appreciate your

20   ruling.  The one thing I did want to clarify just to not let it

21   go unresponded to is that the debtor has not been paying AES.

22   We are -- have not been receiving adequate protection payments.

23   The issue of interest, of course, is at play, depending on

24   which valuation you accept.  The purchase price was due years

25   ago.  It hasn't been paid.  And so we just have to clarify that

**9300 Wilshire Llc**

19

1  statement.

2          And the other thing.  If we were in a case where -- of

3  this size where you're dealing with values far in excess of 100

4  million dollars, your asset value probably close to half a

5  billion dollars perhaps, is there would probably be a financial

6  advisor, a creditors committee, and we'd be able to look at

7  options for selling the entire property, right?  The whole --

8  the building itself and the adjacent vacant property to try to

9  maximize value of that.

10          And here we're -- what I'm perceiving is it's a

11  fractional interest, nobody's going to want to buy it, and so

12  that's all it's worth to the debtor, and so it's going to go

13  over to the insiders.  And I just think that there are other

14  solutions here to maximize value that we just simply aren't

15  seeing in a case where you have an interested debtor with -- I

16  mean, what we would ordinarily be saying co-debtors but they're

17  not, right?  They -- because they got the benefit of the stay

18  on the Redondo --

19          THE COURT:  I think we're going far afield from here,

20  and I've ruled.  Thank you very much.

21          MR. SAHN:  Thank you, Your Honor.

22          MR. WOLFE:  Thank you, Your Honor.

23          MS. O'BRIENT:  Thank you, Your Honor.

24      (Whereupon these proceedings were concluded at 10:49 AM)

25

20

1                                C E R T I F I C A T I O N

2

3   I, Colin Richilano, certify that the foregoing transcript is a

4   true and accurate record of the proceedings.

5

6

7

8   _____

9   /s/ COLIN RICHILANO

10

11  eScribers

12  7227 N. 16th Street, Suite #207

13  Phoenix, AZ 85020

14

15  Date:  July 12, 2023

16

17

18

19

20

21

22

23

24

25

Case 2:23-bk-10918-VZ    Doc 103    Filed 07/12/23    Entered 07/12/23 14:53:35    Desc
In Re: 9300 WILSHIRE LLC         Main Document      Page 21 of 26

July 11, 2023

**$**

**$105,352.39 (1)**
6:1

**A**

**abandon (1)**
15:24
**abandoned (1)**
13:17
**Abigail (1)**
4:14
**able (2)**
16:14;19:6
**accept (4)**
7:2;17:3,13;18:24
**accepted (1)**
17:4
**accrual (3)**
6:13,19,21
**accruing (2)**
6:11,15
**accurate (1)**
8:8
**acquire (1)**
9:16
**actual (1)**
18:14
**adds (1)**
10:3
**adequate (1)**
18:22
**adjacent (1)**
19:8
**adjusted (1)**
6:12
**advisor (1)**
19:6
**AES (5)**
4:12;13:9;15:25;
16:6;18:21
**affairs (1)**
7:19
**afield (1)**
19:19
**Again (2)**
11:19;15:1
**ago (1)**
18:25
**agree (1)**
7:12
**agreed (1)**
5:21
**agreement (1)**
5:20
**ahead (1)**
16:23
**allow (2)**
9:11;14:1
**allows (1)**
11:9

**ANGELES (1)**
4:1
**appearances (2)**
4:5,18
**appearing (2)**
4:15;5:3
**appraisal (20)**
10:20,22;11:2,10;
13:13,23;14:1,12,19,
20,25;16:10,11,16,18,
21;17:14,17;18:4,4
**appraisals (1)**
14:8
**appraiser (1)**
11:5
**appraising (1)**
14:3
**appreciate (1)**
18:19
**appreciating (1)**
8:14
**approval (1)**
9:13
**approve (1)**
18:17
**approved (1)**
13:24
**area (1)**
18:14
**argument (3)**
12:8,16;15:17
**asset (2)**
13:25;19:4
**assets (1)**
13:16
**assignment (1)**
18:14
**attached (1)**
5:16
**August (1)**
18:9
**away (1)**
12:21

**B**

**baby (1)**
16:20
**back (2)**
5:24;15:25
**ball (1)**
18:12
**Bank (2)**
5:3,20
**bankruptcy (4)**
7:19;8:18;9:1;
15:21
**Bank's (1)**
7:3
**base (1)**
6:12
**based (1)**
9:22

**basis (6)**
10:23;12:20;15:18;
17:5,5,7
**Bates (1)**
5:18
**Beach (2)**
4:16;16:6
**beginning (1)**
18:9
**behalf (3)**
4:15;5:3,7
**bench (2)**
17:24;18:10
**benefit (1)**
19:17
**best (1)**
7:13
**better (3)**
8:16;9:12;13:23
**Beverly (2)**
9:17;17:2
**bid (5)**
9:8,18;16:23,24;
18:3
**billion (1)**
19:5
**bit (1)**
12:17
**blowback (1)**
16:20
**Bockius (1)**
4:12
**Boey (3)**
4:18,19,22
**borrower (1)**
5:20
**borrowers (1)**
5:21
**both (1)**
17:24
**bottom (2)**
5:19;9:14
**brief (1)**
15:8
**bring (2)**
16:24;18:6
**broker (2)**
12:12;17:2
**brokered (1)**
14:15
**brokers (3)**
17:9,9,25
**building (1)**
19:8
**burden (2)**
13:6;14:16
**businesses (1)**
9:5
**buy (2)**
12:8;19:11
**buyer (3)**
9:5,11;10:24
**buyers (1)**

17:10

**C**

**calendar (2)**
4:4;8:16
**CALIFORNIA (1)**
4:1
**Call (1)**
4:3
**can (17)**
7:10;10:13;12:15;
13:17;14:4;16:11,11,
17,25;17:8,18,25;
18:3,4,5,9,13
**candidly (1)**
5:15
**captured (1)**
14:11
**carry (1)**
12:17
**case (11)**
9:3,12;10:23;11:24,
25;12:24;13:1;14:5;
15:21;19:2,15
**cases (2)**
9:2;18:8
**certainly (5)**
7:2;10:19;16:8,14;
17:9
**change (1)**
10:15
**changes (1)**
5:19
**Chapter (2)**
4:8;9:2
**characterization (1)**
7:24
**charged (1)**
6:19
**Charles (2)**
5:5,6
**charted (1)**
15:10
**City (4)**
4:15;14:2;15:9;
16:6
**clarify (2)**
18:20,25
**client (4)**
14:2;15:19,20;16:6
**client's (1)**
15:19
**Clifford (1)**
5:2
**close (2)**
15:2;19:4
**closely (1)**
17:13
**clue (1)**
15:17
**co-debtors (1)**
19:16

**comfort (1)**
13:14
**comment (1)**
11:11
**comments (2)**
5:14;11:23
**commercial (1)**
9:17
**commission (1)**
17:5
**committee (1)**
19:6
**compare (1)**
16:11
**compelled (1)**
7:22
**compelling (1)**
9:18
**complex (1)**
11:25
**complexion (1)**
10:16
**complicated (1)**
11:25
**conceivable (1)**
10:2
**concern (6)**
13:10,19;14:6,8,13,
14
**concerned (2)**
11:13;12:23
**concerns (2)**
13:1,15
**concluded (1)**
19:24
**conditions (1)**
18:1
**contain (1)**
5:18
**contents (1)**
11:12
**contest (1)**
16:13
**contested (2)**
7:21;16:5
**contingency (1)**
17:5
**continue (1)**
16:7
**continued (2)**
11:9,14
**continues (2)**
7:5;15:13
**contrast (1)**
16:12
**controlling (1)**
10:14
**controls (1)**
6:4
**conventional (1)**
13:14
**convinced (2)**
14:9,18

Case 2:23-bk-10918-VZ    Doc 103    Filed 07/12/23    Entered 07/12/23 14:53:35    Desc
In Re: 9300 WILSHIRE LLC               Main Document        Page 22 of 26

July 11, 2023

**co-owned (1)**
9:6
**correctly (1)**
13:15
**cost (2)**
12:17;13:18
**costs (1)**
6:18
**counsel (3)**
8:2;11:11;18:18
**counselors (1)**
6:6
**couple (1)**
11:22
**course (3)**
5:13;15:11;18:23
**Court (40)**
4:3,4,10,13,17,21,
23;5:1,5,9,10;7:18;
9:21,23;10:1,8,9,13,
15;11:6,16,18;13:20,
22,22;14:20;15:7,10,
13,14;16:15,19,19,24;
17:11,16,20;18:6,7;
19:19
**courtroom (1)**
4:6
**Craig (1)**
4:11
**creditor (3)**
4:12;6:25;12:21
**creditors (1)**
19:6
**current (1)**
17:16
**Curtis (1)**
5:1
**cushion (1)**
6:25

**D**

**date (2)**
11:15;18:6
**dates (1)**
17:22
**day (2)**
13:4,17
**days (2)**
10:19;16:10
**dealing (1)**
19:3
**debtor (12)**
6:22;8:2;9:9;10:14;
11:24;12:17,18;16:4;
18:4,21;19:12,15
**debtor-in-possession (2)**
4:8;9:3
**debtors (1)**
6:20
**debtor's (4)**
7:18;8:7,19;10:14
**debts (1)**

15:22
**decide (1)**
12:15
**decision (1)**
14:10
**declaration (1)**
10:21
**deep (1)**
13:1
**deeply (1)**
12:23
**default (1)**
6:8
**degree (1)**
10:18
**delay (2)**
13:7,18
**delaying (1)**
13:11
**delta (2)**
14:9;15:1
**demonstrate (1)**
14:17
**depending (1)**
18:23
**depressant (1)**
8:13
**develop (1)**
14:21
**development (1)**
16:4
**difference (1)**
15:1
**different (2)**
7:22;16:3
**direction (1)**
15:11
**disagree (2)**
9:20;16:17
**discuss (1)**
8:24
**discussed (1)**
8:23
**discussion (1)**
11:1
**disinterested (1)**
8:17
**dispose (1)**
14:4
**disposing (1)**
13:16
**district (1)**
9:17
**docket (1)**
5:17
**document (1)**
6:1
**documents (1)**
5:16
**dollars (13)**
6:14,19;7:25;8:7,
11;10:23,25;11:2;
12:5,6;15:20;19:4,5

**done (5)**
12:14;13:5,13,15;
14:17
**Dorchak (3)**
4:23,24,25
**due (1)**
18:24
**during (2)**
8:16;16:22

**E**

**East (3)**
5:3,20;7:3
**else (4)**
8:5;9:20;15:15;
18:18
**emergency (1)**
12:20
**end (4)**
13:2,4,17;18:10
**enough (3)**
9:18;14:11;15:2
**entire (1)**
19:7
**entitled (1)**
6:25
**entity (3)**
14:2,3;18:5
**equally (1)**
9:15
**equity (1)**
6:24
**especially (2)**
9:8;17:15
**establish (1)**
7:13
**establishing (1)**
17:15
**estate (8)**
7:14;8:14;9:4,16;
12:4,6;17:2,2
**evaluate (1)**
12:15
**even (2)**
8:13;10:9
**evidence (1)**
7:14
**exactly (1)**
10:17
**excess (2)**
6:9;19:3
**exclusively (1)**
13:13
**exercise (1)**
9:10
**exists (1)**
7:7
**expedited (1)**
12:9
**expenses (1)**
6:17
**experience (1)**

9:22
**exposition (1)**
10:10
**extent (1)**
6:16

**F**

**face (1)**
9:11
**fact (4)**
15:9,25;16:12;
17:15
**failed (1)**
7:13
**fair (2)**
10:10;14:21
**fall (1)**
18:13
**familiar (1)**
17:9
**far (4)**
11:12;12:21;19:3,
19
**fashion (1)**
17:22
**fault (1)**
6:4
**fee (1)**
17:5
**few (1)**
11:20
**file (3)**
16:10,16,17
**filed (2)**
5:17;11:10
**financial (2)**
7:19;19:5
**find (1)**
17:10
**finder (1)**
16:12
**first (2)**
4:5;18:14
**five (1)**
6:8
**floor (1)**
17:16
**following (1)**
17:21
**foresee (1)**
15:2
**forth (1)**
15:12
**forums (1)**
16:3
**four (1)**
15:4
**fractional (3)**
9:4,19;19:11
**free (1)**
15:21
**front (1)**

8:18
**funding (1)**
6:18
**funny (1)**
15:20
**future (1)**
15:2

**G**

**general (1)**
12:25
**generally (1)**
11:22
**given (3)**
8:19;11:3;17:15
**gives (1)**
17:17
**giving (2)**
8:9;11:10
**good (9)**
4:7,11,14,19,24;
5:6;11:19;13:8,9
**Greenspoon (1)**
4:8
**ground (1)**
10:5
**guess (2)**
8:25;14:25

**H**

**half (2)**
10:5;19:4
**hand (1)**
9:15
**hands (2)**
13:3,16
**happen (1)**
15:25
**happy (2)**
6:5;11:8
**harm (3)**
12:8;13:10,18
**heard (2)**
5:11;12:1
**hearing (8)**
4:9;5:8;11:9,13,14;
12:19,19;15:13
**hearings (1)**
18:15
**heavily (1)**
11:25
**held (1)**
17:13
**helpful (1)**
15:3
**high-end (1)**
9:17
**higher (2)**
7:11;9:12
**highly (1)**
14:16

Case 2:23-bk-10918-VZ    Doc 103    Filed 07/12/23    Entered 07/12/23 14:53:35    Desc
In Re: 9300 WILSHIRE LLC          Main Document          Page 23 of 26

July 11, 2023

**Hills (2)**
9:17;17:3
**Honor (31)**
4:7,11,14,19,22,24;
5:2,6,12,12,16;6:3,6;
7:6,9,16;8:4;9:14;
10:3,17;11:9,17,19;
15:8,16;16:11,25;
18:19;19:21,22,23
**Honor's (2)**
6:23;7:2
**hourly (1)**
17:7
**hours (1)**
8:3
**hundreds (1)**
12:5

**I**

**idea (1)**
14:21
**important (1)**
12:16
**improve (1)**
10:18
**improved (1)**
10:4
**inclined (4)**
13:22;16:20;17:20,
24
**including (1)**
15:23
**increase (2)**
8:11;11:4
**increased (4)**
5:25;6:13;8:10;
11:5
**incremental (2)**
13:2;14:5
**indebtedness (1)**
15:19
**independent (1)**
10:13
**indicate (1)**
7:10
**indicates (2)**
7:16;9:14
**information (1)**
12:15
**input (1)**
14:2
**insider (3)**
7:11;13:3;14:16
**insiders (3)**
6:17;13:16;19:13
**insider-to-insider (1)**
14:15
**insignificant (1)**
12:3
**intend (1)**
11:20
**interest (25)**

5:21,23;6:5,8,11,12,
20;7:13;8:7,12,15,20;
9:4,6,16;10:11,14;
12:11;13:25;14:3;
17:4,10,13;18:23;
19:11
**interested (2)**
18:5;19:15
**interests (1)**
13:2
**interim (1)**
16:22
**interstitial (1)**
18:13
**into (1)**
18:13
**invested (1)**
9:7
**investors (2)**
9:6,10
**invite (1)**
16:14
**involve (1)**
16:5
**involved (1)**
12:25
**issue (5)**
8:22;10:9;14:5,15;
18:23
**issued (1)**
5:10
**issues (3)**
9:19;11:20;15:12
**item (1)**
4:4

**J**

**Joshua (2)**
4:23,24
**judge (2)**
18:14,15
**JULY (1)**
4:1
**Jung (3)**
5:1,2,2
**justifies (1)**
12:9

**K**

**keep (2)**
18:9,12
**kind (2)**
11:22;17:7
**known (1)**
12:18
**knows (1)**
16:2

**L**

**largest (1)**

**12:21**
**latter (1)**
14:6
**lease (1)**
10:5
**least (4)**
6:7;12:6;13:14;
16:3
**leave (1)**
18:10
**left (3)**
8:2;10:5;13:3
**less (1)**
10:22
**level (1)**
7:11
**Lewis (3)**
4:12,25;5:7
**likely (1)**
17:10
**limited (1)**
15:12
**listed (2)**
12:11;18:2
**listen (1)**
5:7
**listening (3)**
4:20,25;5:4
**listing (3)**
17:3,4,13
**litigation-friendly (1)**
7:22
**little (3)**
8:25;12:1,17
**LLC (1)**
4:5
**located (1)**
9:16
**look (2)**
11:23;19:6
**looks (1)**
5:25
**LOS (1)**
4:1
**lose (1)**
15:5
**loss (2)**
6:21;7:4
**lost (2)**
15:4,4
**lot (1)**
12:14

**M**

**maintained (1)**
7:8
**Malaret (3)**
5:5,6,7
**many (4)**
9:1,4,4,7
**March (4)**
5:24;6:13;7:20;

8:11
**Marder (1)**
4:8
**market (5)**
8:13;10:10;14:18,
20,21
**marketed (1)**
13:12
**marketing (1)**
12:12
**matching (2)**
9:9,10
**material (1)**
6:22
**matter (4)**
5:10;7:21;15:13;
17:16
**maximize (2)**
19:9,14
**May (2)**
10:8;18:10
**maybe (1)**
10:19
**mean (3)**
14:24;17:25;19:16
**meantime (1)**
18:3
**meeting (2)**
8:1,3
**Melissa (1)**
4:18
**memory's (1)**
13:23
**method (1)**
14:18
**might (2)**
7:21,23
**million (7)**
7:25;8:7;10:25;
11:3;12:6;15:20;19:4
**millions (1)**
12:5
**mine (1)**
13:24
**minority (1)**
9:5
**Mintz (1)**
4:15
**money (1)**
12:17
**month (2)**
6:15,16
**monthly (6)**
5:25;6:13,19,21,21;
12:2
**months (1)**
15:4
**more (10)**
7:22;8:12,17;10:20;
11:2;12:14;13:14;
15:4,5;16:6
**Morgan (3)**
4:12,25;5:7

**8:11**
**Marder (1)**
4:8

**morning (9)**
4:7,11,14,19,24,25;
5:6;11:19;15:10
**mortgage (1)**
17:2
**most (1)**
17:17
**motion (5)**
7:17,20;8:10;10:16;
16:9
**motivate (1)**
9:18
**move (2)**
14:5,7
**moves (1)**
14:10
**much (6)**
4:21;5:9;8:17;15:5,
14;19:20

**N**

**nature (1)**
17:3
**need (1)**
14:19
**needle (1)**
14:10
**needs (1)**
6:16
**net (1)**
12:7
**Next (3)**
4:4;8:24;14:7
**nobody's (1)**
19:11
**nor (1)**
13:8
**normal (2)**
12:10;14:18
**note (1)**
5:22,23;6:4,5,9,10
**notwithstanding (2)**
6:23;9:19
**number (4)**
5:17,18;10:25;11:3

**O**

**object (1)**
11:11
**objection (1)**
15:12
**O'BRIENT (5)**
4:14,15;15:7,8;
19:23
**observation (2)**
6:23;7:3
**off (3)**
13:2;15:18,24
**offer (4)**
9:12;10:23;17:16,
25

Case 2:23-bk-10918-VZ    Doc 103    Filed 07/12/23    Entered 07/12/23 14:53:35    Desc
In Re: 9300 WILSHIRE LLC        Main Document        Page 24 of 26

July 11, 2023

**offering (1)**
10:24
**often (1)**
14:24
**one (11)**
5:16;7:23;9:12;
10:4;11:23;14:7;
15:23;16:8;18:9,11,
20
**ongoing (1)**
16:2
**only (1)**
7:14
**oOo- (1)**
4:2
**opinion (2)**
8:9;12:2
**opportunity (2)**
9:16;11:11
**oppose (1)**
15:9
**opposite (1)**
16:1
**options (1)**
19:7
**order (2)**
4:3;17:22
**ordinarily (1)**
19:16
**others (1)**
13:18
**otherwise (2)**
8:14;17:1
**out (3)**
7:6,17;8:4
**over (3)**
9:1;12:6;19:13
**overall (1)**
12:23
**own (3)**
9:22;16:11,18
**ownership (2)**
6:20;9:19
**owns (1)**
17:14

**P**

**page (5)**
5:18;6:23;7:9;8:23;
9:14
**pages (1)**
5:18
**paid (4)**
6:16,16;15:19;
18:25
**papers (2)**
11:21,25
**parcel (2)**
10:4,6
**parcels (1)**
10:4
**pardon (1)**

4:18
**part (1)**
8:16
**partnership (2)**
9:6;17:14
**partnerships (1)**
9:7
**party (1)**
18:5
**pass (1)**
7:5
**passed (1)**
7:5
**path (1)**
15:10
**pay (3)**
10:24,24;11:4
**paying (3)**
10:24;15:22;18:21
**payment (2)**
6:1;12:2
**payments (1)**
18:22
**pending (1)**
7:20
**perceiving (1)**
19:10
**percent (9)**
5:24,25;6:11,14,18,
20;8:8;11:4;17:13
**percentage (1)**
13:25
**perception (1)**
15:17
**perhaps (5)**
5:15;9:12;10:18;
18:9;19:5
**period (3)**
11:10;12:13;16:22
**personally (1)**
17:1
**piece (1)**
12:3
**piecemeal (1)**
15:18
**place (2)**
11:22;14:19
**Plant (3)**
12:24;13:4,6
**plausible (2)**
9:15,23
**play (1)**
18:23
**point (8)**
7:5,17;14:4;15:3;
16:8,9,9;18:17
**pointed (1)**
8:4
**points (2)**
6:9;7:10
**portion (1)**
8:22
**possibly (1)**

17:18
**Power (1)**
12:24
**prejudice (1)**
7:7
**prepared (1)**
16:17
**pretty (1)**
12:2
**prevail (1)**
9:11
**price (1)**
18:24
**principal (1)**
10:14
**probable (1)**
9:24
**probably (5)**
8:11;13:12,23;19:4,
5
**problem (1)**
12:18
**proceedings (4)**
16:2,5,5;19:24
**process (4)**
12:9,10,13;13:7
**projecting (1)**
15:1
**promissory (1)**
6:4
**properly (1)**
12:14
**properties (2)**
15:18,23
**property (18)**
6:17,20;7:24;8:6,
20,20;12:3,4,11;14:7,
22;15:24;16:4,16;
17:10,14;19:7,8
**property's (1)**
6:18
**protection (2)**
17:18;18:22
**provide (1)**
17:19
**provided (1)**
6:9
**provides (2)**
5:21;11:5
**provision (1)**
6:4
**provisions (1)**
17:23
**public (1)**
13:8
**purchase (1)**
18:24
**purposes (1)**
8:10
**pursue (1)**
16:4
**pursuing (1)**
16:7

**Pustilnikov (4)**
7:15,16,18;8:9
**put (4)**
8:18;10:20;13:6;
16:15

**Q**

**quickly (1)**
7:10
**quite (1)**
15:23
**quo (1)**
7:7

**R**

**raised (1)**
8:5
**ranges (1)**
14:24
**rate (7)**
5:21,23;6:5,8,9,12,
14
**rates (3)**
6:12;8:12,15
**real (7)**
8:13;9:4,16;12:10;
17:1,2,18
**realm (1)**
10:1
**reason (3)**
7:7;8:21;11:7
**recall (2)**
13:24;14:1
**receiving (1)**
18:22
**recognized (1)**
14:20
**record (3)**
15:16
**redistributed (1)**
18:8
**Redondo (5)**
4:15;12:24;13:4;
16:6;19:18
**regard (1)**
16:12
**regarding (1)**
9:19
**relief (1)**
7:1
**reply (2)**
5:17;8:4
**report (3)**
11:10,12;16:18
**represented (3)**
11:24;12:4,5
**representing (2)**
9:1,2
**reputable (1)**
17:1
**reserve (1)**

15:11
**respect (1)**
16:3
**result (4)**
7:4;8:22;13:8,9
**reviewed (1)**
5:13
**ride (1)**
15:21
**right (16)**
4:4,17;5:5,9;10:8;
11:22;14:7,8;15:5,7,
11,14;17:20;18:18;
19:7,17
**rights (4)**
7:3;9:9,10;15:12
**rising (1)**
8:12
**rolling (1)**
18:12
**route (5)**
13:23;14:1;16:21,
21;17:15;18:4,16
**routes (1)**
17:24
**ruled (1)**
19:20
**ruling (6)**
5:10,13;6:24;7:9;
8:23;18:20
**run (1)**
10:6
**running (1)**
7:4

**S**

**Sahn (16)**
4:7;7:5;11,12;9:22,
25;10:3,12,17;11:17,
18;15:15,16;16:25;
17:12;19:21
**Sahn's (1)**
13:23
**sake (1)**
11:1
**sale (9)**
7:13;11:14;13:25;
15:9;16:21,23;17:6;
18:2,17
**sales (1)**
9:4
**same (1)**
10:24
**saying (2)**
8:25;19:16
**scale (1)**
11:24
**schedules (3)**
7:19,25;8:18
**scrutiny (1)**
7:11
**second (2)**

Case 2:23-bk-10918-VZ    Doc 103    Filed 07/12/23    Entered 07/12/23 14:53:35    Desc
In Re: 9300 WILSHIRE LLC    Main Document    Page 25 of 26

July 11, 2023

8:24;10:6
**secured (2)**
4:12;6:25
**seeing (1)**
19:15
**seems (1)**
10:9
**select (1)**
18:4
**sell (3)**
13:2;15:18,24
**selling (2)**
12:10;19:7
**sells (1)**
17:2
**September (1)**
18:10
**set (4)**
11:9;15:12;17:25;
18:7
**shifted (1)**
13:18
**shortened (1)**
4:9
**show (1)**
6:6
**showing (1)**
15:20
**shown (2)**
8:6,19
**signed (1)**
7:18
**significant (7)**
6:22,24;7:4,7;12:9;
13:11;14:11
**simply (1)**
19:14
**single (2)**
14:12,18
**size (1)**
19:3
**skip (1)**
17:23
**sliver (1)**
12:1
**sold (1)**
17:4
**solutions (1)**
19:14
**somebody (3)**
10:13;16:23;18:3
**sometimes (1)**
18:13
**sort (2)**
11:23;18:13
**speak (1)**
6:10
**speaking (1)**
4:20
**split (1)**
16:20
**spring (1)**
6:10

**stamp (1)**
5:18
**standing (1)**
16:15
**standpoint (1)**
7:24
**started (1)**
5:23
**state (1)**
11:21
**stated (1)**
14:14
**statement (1)**
19:1
**statements (1)**
7:19
**States (1)**
8:5
**status (1)**
7:7
**stay (2)**
7:1;19:17
**step (1)**
15:10
**still (2)**
8:14;10:9
**strategy (2)**
12:24,25
**subject (1)**
7:3
**subjected (1)**
7:11
**submission (1)**
17:21
**sufficient (1)**
12:12
**suggestion (3)**
5:15;10:8,17
**sure (2)**
6:6;18:11
**surprising (2)**
6:7;8:25
**swing (2)**
14:9,12

**T**

**talk (1)**
11:8
**talking (1)**
12:3
**tangible (1)**
17:18
**telephone (1)**
4:6
**telephonic (1)**
4:18
**tentative (5)**
5:10,13;6:24;7:9;
8:22
**terms (1)**
5:19
**testified (1)**

8:1
**testify (1)**
7:16
**testimony (3)**
7:15,21;8:18
**thanks (1)**
11:20
**Therefore (1)**
6:25
**third-party (2)**
9:8,18
**thirty (3)**
10:19,20;16:10
**though (2)**
8:13;11:23
**throughout (1)**
11:25
**times (1)**
9:1
**tiny (1)**
12:1
**today (2)**
4:20;11:20
**together (1)**
9:7
**tool (1)**
14:21
**top (1)**
5:19
**toward (1)**
15:19
**transaction (1)**
14:15
**tremendous (2)**
13:6;14:16
**true (1)**
7:2
**truncate (1)**
12:10
**Trustee (1)**
8:5
**trustees (1)**
9:2
**truth (1)**
8:21
**try (4)**
16:25;17:8;18:12;
19:8
**trying (1)**
15:2,21
**TUESDAY (1)**
4:1
**turn (2)**
4:18;12:13
**twenty-nine (1)**
10:5
**twenty-one (1)**
10:19
**two (6)**
8:2,3;10:4;16:3,9;
18:9
**type (1)**
13:25

**U**

**ultimately (2)**
14:10;15:13
**Um-hum (1)**
17:11
**under (3)**
6:5;10:5;17:21
**un-entitled (1)**
10:7
**unimproved (1)**
10:6
**United (1)**
8:5
**unless (1)**
6:11
**unlikelihood (1)**
17:6
**unresponded (1)**
18:21
**unusual (1)**
14:16
**up (3)**
11:8;12:13;13:3
**upon (4)**
5:21;10:18;11:11;
12:15
**upward (1)**
6:12
**urgency (1)**
12:22
**use (2)**
7:23;10:25

**V**

**vacant (2)**
10:6;19:8
**valuable (1)**
8:14
**valuation (6)**
7:21,22,23;11:5;
14:12;18:24
**value (12)**
7:14;8:6,10,19;
10:10;12:7;13:12;
14:21;16:12;19:4,9,
14
**valued (1)**
7:24
**values (3)**
14:9,24;19:3
**Victor (1)**
4:7
**view (1)**
14:17
**vigorously (1)**
16:7

**W**

**way (2)**

13:14;15:20
**welcome (1)**
16:13
**weren't (1)**
8:15
**West (3)**
5:3,20;7:3
**Whereupon (1)**
19:24
**whole (1)**
19:7
**wildly (1)**
14:9
**Wilshire (1)**
4:5
**wish (1)**
11:12
**wishes (1)**
16:4
**within (3)**
10:1,19;14:11
**Wolfe (10)**
4:11,11;11:16,19;
13:21;14:6,23;16:2;
18:19;19:22
**words (2)**
7:23;11:4
**work (1)**
18:15
**worth (3)**
12:5;16:16;19:12

**Y**

**year (4)**
5:24;6:11;7:20;
8:16
**years (3)**
9:1;10:5;18:24
**yesterday (1)**
5:17

**1**

**10.55 (5)**
6:18,20;8:7;11:4;
17:13
**10:22 (1)**
4:1
**10:49 (1)**
19:24
**100 (2)**
12:6;19:3
**11 (2)**
4:1,8
**115 (1)**
4:4
**12.6 (2)**
6:11,13
**174,960 (2)**
6:14,19

**2**

**2019 (1)**
  5:24
**2023 (1)**
  4:1
**23 (3)**
  7:9;8:23;9:14
**24 (1)**
  6:23
**27 (4)**
  6:23;7:9;8:23;9:15

**3**

**341a (1)**
  8:1
**37 (2)**
  5:18;15:19

**4**

**4.3 (2)**
  10:25;11:3
**4.5 (1)**
  5:24
**40 (2)**
  7:24;8:6
**40,750,000 (2)**
  10:22;11:2
**43 (2)**
  5:18,19
**46 (2)**
  5:18,19

**7**

**7 (1)**
  9:2
**7.6 (1)**
  5:25
**750,000 (1)**
  8:10

**9**

**9300 (1)**
  4:5
**96 (1)**
  5:18