

**FILED & ENTERED**

**AUG 28 2024**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY johnson   DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>9300 Wilshire, LLC, a Delaware Limited Liability Company,<br><br><br><br>Debtor(s). | Case No.: 2:23-bk-10918-VZ<br><br>CHAPTER 11<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER DENYING APPROVAL OF 2nd AMENDED DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION FILED BY AES REDONDO BEACH, LLC [docket #438]**<br><br><u>Hearing Date:</u><br>Date:  August 15, 2024<br>Time:  11:00 a.m.<br>Ctrm:  1368, Roybal Federal Building<br>         255 E. Temple St.<br>         Los Angeles, CA 90012 |

On **July 4, 2024**, AES Redondo Beach, LLC ("Proponent") filed a Disclosure Statement and Plan of Reorganization ("AES Disclosure Statement," docket #399) and filed a Notice of Hearing on Adequacy of Disclosure Statement ("Hearing Notice," docket #400).  On **July 25, 2024**, Proponent filed a Motion to Approve Adequacy of the Disclosure Statement ("AES Motion," docket #414).  **On August 1, 2024**, oppositions to the Motion were filed by the Debtor ("DIP Opposition," docket #427) and by equity owners and other interest holders ("Equity Opposition," docket #429), (collectively, the "Oppositions to AES Motion").  On **August 8, 2024**, the Proponent filed a reply to the Oppositions to AES Motion ("AES Reply," docket #437).

On **August 1, 2024**, the Proponent filed a 1st Amended Disclosure Statement and Plan of Reorganization ("AES 1st Amended Disclosure Statement," docket #424) and a related notice of filing that includes a redline version of the AES 1st Amended Disclosure Statement ("AES 1st Redline," docket #424).  Also on **August 1, 2024**, the City of Redondo Beach (the "City") filed a response to the Motion ("City Response," docket #428).

On **August 8, 2024**, the Proponent filed a 2nd Amended Disclosure Statement and Plan of Reorganization ("AES 2nd Amended Disclosure Statement," docket #438) and a related notice of filing that includes a redline version of the 2nd Amended Disclosure Statement ("AES 2nd Redline," docket #439).

A hearing on the Motion was set for **August 15, 2024**, at 11:00 a.m.  The court posted a tentative ruling in which the court waived appearances at the hearing.

Based on the court's review of the documents indicated above, the court makes the following findings of fact and conclusions of law:

## I. STANDARDS FOR LANGUAGE USED IN FILED DOCUMENTS

When an attorney or party signs a document that is to be filed with the court, the standards of FRBP 9011(b) and FRBP 9018(2) apply.  Particular words used to refer to activities, behavior and intent must have a reasonable basis in law or in fact.  The court notes several instances where language contained in the 2nd Amended Disclosure Statement and/or the Motion, and Reply to Oppositions, seem scandalous or defamatory without having a reasonable basis in law or fact.  Counsel must refrain from use of such language.  An assertion must either be true as a matter of law or be supported by admissible evidence made in a declaration signed under penalty of perjury.

## II. The AES 2nd AMENDED DISCLOSURE STATEMENT DOES NOT CONTAIN ADEQUATE INFORMATION REQUIRED BY 11 U.S.C. §1125

The AES 2nd Amended Disclosure Statement is the operative document.  The AES Disclosure Statement and AES 1st Amended Disclosure Statement are moot.

**A. Caption Page, p.1-6** :

    **p.1**  Proponent amended the heading "Plan" to include "Plan Overview."  This lengthened the opening section from one page to six pages, which hides the Table of Contents on page seven.  This will confuse readers.  The Plan Overview can be included as an Exhibit if the Proponent desires the overview to be included.

    **p.2**  Proponent includes language that argues the comparative merits of its disclosures and plan terms when such discussion is more apt in an opposition to the Debtor's motion to approve disclosure statement.

    **p.4**  The chart of potential dates and deadline/events does not follow due process periods for filing motions, responses, replies, and holding hearings that are set in the LBR or by this court.  In addition, at least the first eight dates indicated are obsolete because they cannot be met.

    **p.5**  The paragraph titled "DISCLOSURE STATEMENT" must be returned to the bottom of page one.

**B. Table of Contents. p.6**

    1. <u>Location</u>.  The Table of Contents needs to be on page two.

    2. <u>Mandatory Exhibits: Improperly Deleted</u>.  Entries on the itemized list of "Mandatory Exhibits" may not be deleted from the Table of Contents.  Proponent must relist Exhibit C (List of All Property and Valuation of Property as of Confirmation Date), Exhibit D (Projected Income, Expenses, and Payments by Month/Quarter), and Exhibit E (Financial Records).  These exhibits will contain information that secured claims in Classes 3 and 4 need because those claims are to be paid by the Debtor.

    3. <u>Headings: Improperly Added</u>.  This mandatory court form includes heading letters and numbers that require consistency between the Table of Contents and the rest of the form.  The Proponent added a section as "X. Conditions Precedent to Effective Date," which needs to be removed.  This information can be included in Section II under Effective Date, which can refer to an Exhibit if more space is needed.  Section "X" is also referenced on pages 19, 21, 26, and 35.

**C. Section II. Type of Plan of Reorganization; Important Dates. p.8**

    1. <u>Distributions</u>.  Proponent indicates that distributions will be made "as soon as practicable" after the Effective Date.  More clarity is needed about the outside limit of what is practicable and what remedies a creditor has, if any.

    2. <u>Revocation</u>.  Proponent added language to indicate that AES reserves the right to "revoke or withdraw the Plan before the Effective Date."  A plan is confirmed after an order is entered granting a motion to confirm the plan.  Proponent needs to include a discussion of the procedural steps required to revoke a plan when an order is entered and final, though the Effective Date has not been reached.

**D. Section III. Description of Debtor's Past and Future Business and Events Precipitating Bankruptcy Filing:**

    1. <u>Past and Future Business Operations</u>. **p.8-9**

      a.  Proponent does not provide information on the relationship between the Debtor and its non-debtor affiliates, co-owners, or co-interest holders in the properties that are not the Redondo Harbor property.

      b. Proponent does not provide any information about the Debtor's financial outlook regarding properties that are not the Redondo Harbor property.

       c. Proponent does not discuss the new post-petition activities Debtor must perform for the AES Plan Administrator or Disbursing Agent as part of the Debtor's post confirmation operations.  Presently, a summary of these activities is found at the bottom of page 15 under the heading "Post-Confirmation Status Reports."

    2. <u>Factors That Led to Filing This Bankruptcy Case</u>.  **p.9**

       a.  Proponent should add language discussing the disputed calculation that was used by AES to initiate foreclosure proceedings.

       b.  Proponent should add language about soil contamination when SCE and AES operated the Redondo Harbor property.

       c.  Proponent should add language about the status of the Corrective Action Consent Agreement and any follow-up work that has or has not been done.

   3.  <u>Future Financial Outlook</u>.  **p.14**

    a.  Proponent does not provide information about financial outlook regarding properties that are not the Redondo Harbor property.

   4.  <u>Proposed Disbursing or Multi-purpose Post-confirmation Agent (MPPCA)</u>

    **p. 15**.  Proponent checked MPPCA but refers to "AES or its designee" to be appointed as plan administrator, who later may engage a disbursing agent. Terminology should be consistent.

    **p.15.**  Proponent is not clear as to the identify of a proposed MPCCA or its qualifications, compensation, etc.  The deadline to be more specific must be the deadline for parties to file preliminary objections to plan confirmation, which is a date prior to filing a motion to confirm a plan.

    **p.15-17**.  Proponent indicates the AES Plan Administrator has "sole authority" to reconcile claims, without a court order, including Administrative Claims, Tax Claims, Other Priority Claims in Class 1, and General Unsecured Claims.  No legal support is provided for replacing court authority to adjudicate requests for compensation to professionals under 11 U.S.C. 329 or 330, and FRBP 2016.  It is clear from the Plan that some amount of Professional Fees that qualify as Administrative Claims will derive from preconfirmation services.

**E.  Section IV . Definitions and Preliminary Information**.  **p.16**

    1.  Who may vote.

    a.  Proponent should clarify that holders of secured claims in Classes 3 and 4 may be impaired and, thus, are entitled to vote on the plan.  This seems logical because the Proponent is not responsible for making any payments on those claims.  Impairment should also be clarified on every page where, now, the Proponent states with certainty that those claims are not impaired.

    b.  Proponent should indicate that holders of equity interests are impaired under the Plan and are entitled to vote.


**F. Section V. Source of Money to Satisfy Claims and Interests**:

    1. <u>Non-Income Sources to Fund Plan</u>:

    a. Loan or Line of Credit.  This box is not checked but at pages **2, 19** and other pages, and in the declaration of Mark Miller, the Proponent indicates only that Proponent is "committed" to funding the Plan.  No details are given to support a finding that Proponent has the resources to fund the Plan.

    b. Sale of Property.  This box is checked, yet the accompanying language indicates a sale of the Redondo property is not necessary for AES to sponsor and fund distributions under the Plan.


    2. <u>Payments on the Effective Date</u>:

    a. Source of Funds on the Effective Date.   On **p.19** and in the declaration of Mark Miller, the Proponent indicates AES has "agreed to fund certain expenses and distributions" and/or is "committed" to funding the Plan.  No details are given to support a finding that Proponent has the resources to make payments on the Effective Date, or from what resource funding will come.


    3. <u>Cash Available After Payments Made on the Effective Date</u>.   On **p.20** and in the declaration of Mark Miller, the Proponent indicates only that Proponent is "committed" to funding the Plan.  No details are given to support a finding that Proponent has the resources to fund the remainder of the Plan, or from what resource funding will come.  On **p.20**, Proponent indicates "N/A" on cash available after payments made on Effective Date.  According to its calculations, $1,495,000 in payments are owed after the Effective Date.

   4. <u>Financial Records</u>.  **On p.21**, the proponent refers readers to its website to locate "recent earnings materials, annual reports and SEC filings."  Proponent must include, as Exhibit E, financial records directly related to funding the plan.

   5. <u>Explanation of Risk Factors and Potential Fluctuations When Implementing the Plan</u>.  **p.21**
    a.  Proponent does not provide information on the impact of environment cleanup requirements on the ability of AES to conduct a foreclosure sale.

    b.  Proponent does not provide information on the impact of pending litigation on the ability of AES to conduct a foreclosure sale.

    c.  Proponent does not provide information on the impact of Debtor's objection to AES's claims on the ability of AES to credit bid at a foreclosure sale.  See 11 U.S.C. 363(k).  See also **p.4** and **p.36** for references to an AES credit bid.

    d.  Proponent does not provide information on the impact of potential litigation by non-debtor interest holders whose rights are negatively impacted by the AES Plan, including a nonjudicial foreclosure sale.


**G.  Section VI.** Assets and Liabilities of the Estate.

   1. <u>Assets</u>.  **p.26** – Proponent refers to Debtor's schedules without including Exhibit C to identify the nature and value of assets, including real property or recovery from pending litigation, or an accompanying declaration to establish methods of valuing assets or the identity of the person who performed the valuations.


**H.  Section VII.** Treatment of Nonconsenting Members of a Consenting Class.

   **p.26**  Clarify that it is not certain that secured claims in Classes 3 and 4 are not impaired, i.e. Valley National Bank and East West Bank.

   **p.27**.  Liquidation Analysis: the "Chapter 7" column is inadequate because no information is provided.

   **p.27**.  In the Chapter 11 column, "100% Recovery" is indicated for Administrative Expense Claims.  Elsewhere it is clear that amounts exceeding $800,000 will not be paid by Proponent and some amount of Administrative Expense Claims may not be paid if a convoluted process is not followed.

   **p.27**.  There is no analysis of impact of foreclosure on properties that are not the Redondo Harbor property.

I. **Section VIII. Treatment of Claims**

    1. <u>Administrative Expense Claims</u>, **p.28, 29**.  When describing payment of Administrative Claims to be paid by the Debtor or later by AES:

        a.  Proponent must clarify the meaning of the statement that debtor shall be expected to pay all Administrative Claims "as they come due in the ordinary course of business."

        b.  Proponent must provide legal authority for requiring the debtor to prepare and file "Notice of Estimated Administrative Claims" every other Wednesday between the date an order granting a motion to approve disclosure statement is entered, and the Effective Date.

        c.  Proponent must provide legal authority for having its Administrative claim (as defined in the 1st Amended Disclosure Statement) paid from the Debtor's interest in proceeds of a sale of the Redondo Harbor property.

    2. <u>Other Unsecured Claims</u>.

        **p.31**.  Proponent indicates that these will be paid in full at 5.14%, "as soon as practicable" after the Effective Date.

        **p.15-17**.  Proponent then indicates the AES Plan Administrator shall have sole authority to reconcile and object to all … General Unsecured Claims in Class 2. This needs to be clarified.

    3. <u>Secured Claims</u>.

        **Class 3, VNB, p.32**.  Proponent asserts that the claim of Valley National Bank is not impaired because the Debtor and VNB entered into an agreement.  AES does not provide any discussion of Debtor's ability to honor that agreement, and AES explicitly provides that AES shall not be obligated to fund any cash payments or other consideration to any holder of the VNB secured claim under the Plan.

        **Class 4, EWB, p.33**.  Proponent asserts that the claim of East West Bank is not impaired because the Debtor and EWB entered into an agreement.  AES does not provide any discussion of Debtor's ability to honor that agreement, and AES explicitly provides that AES shall not be obligated to fund any cash payments or other consideration to any holder of the EWB secured claim under the Plan.

        **Class 5A, AES Environmental DOT, p.34**.  Proponent asserts a minimum value of the claim without providing information about the differences in how AES and the Debtor calculate this value differently, including past and pending litigation.

**Class 5B, AES Performance DOT, p.34-36**. Proponent asserts a minimum value of the claim without providing information about the differences in how AES and the Debtor calculate this value differently, including past and pending litigation.

4. *Shareholder or Partner Interests*. At various places in the 2nd Amended Disclosure Statement, the Proponent indicates that its Plan "reinstates equity." More clarity is needed, including the potential elimination of equity if the Redondo Harbor property is sold at a foreclosure sale.

**J.  Section X.  Conditions Precedent.**  See discussion earlier under section B.3.

**K.  Section XI.** Effect of Confirmation.

1. Releases, **p.3, 38, 39**

a. AES Redondo and all of its "assigns, predecessors, participants …" will receive broad releases under the Plan, which appears to violate the U.S. Supreme Court's recent decision in Harrington v. Purdue Pharma, L.P. In addition, there is no discussion of the impact of pending litigation on the releases.

b. The City of Redondo Beach and all of its "assigns, predecessors, participants ….. " appears to receive a release as a participant in a Cause of Action with Debtor and as a governmental unit. This appears to violate the U.S. Supreme Court's recent decision in Harrington v. Purdue Pharma, L.P. There is no discussion of any contribution to the Plan by the City of Redondo Beach, to be entitled to releases. In addition, there is no discussion of the impact of pending litigation on the releases.

c. Exculpations, **p.3, 35**.  Proponent does not provide information to explain why there are "exculpated" parties or provide legal authority for exculpation being an effect of plan confirmation.

**L. Section XII.** List of Exhibits and Declarations:

1. Mandatory:

**Exhibit C**:  A list of all property and valuations are needed because they secure claims in Classes 3, 4 and 5.

**Exhibit D:** Projected Income, Expenses and Payments by Quarter are needed because payments are required by the Debtor on claims in Classes 3 and 4.

**Exhibit E:**

a. <u>AES</u> – Relevant financial records must be provided for the Proponent (as the Proponent indicates it will fund approximately $2,045,000 to pay claims). Language on **p.21** is insufficient as it merely identifies the general website (https://www.aes.com) on which a creditor or interested party must search for financial records, to the extent such records are found at that website.

b. <u>Debtor</u> – Relevant financial records must be provided for the Debtor (as it must pay claims in Classes 3 and 4).

.

###

Date: August 28, 2024

Vincent P. Zurzolo
United States Bankruptcy Judge